JACKSON COUNTY BY AND THROUGH ITS CHILD SUPPORT ENFORCEMENT AGENCY, EX REL. ANNETTE JACKSON v. JOHN WESLEY SWAYNEY

No. 461A85

(Filed 3 February 1987)

1. **Indians § 1— public assistance, future child support, and paternity—actions involving Cherokee Indians—no federal preemption**

    Federal laws and regulations did not preempt the exercise of state court subject matter jurisdiction over actions to establish paternity, to collect a debt to the State for past AFDC payments, and to obtain future child support involving a mother, child and putative father who are all members of the Eastern Band of Cherokee Indians residing on the Indian reservation.

2. **Indians § 1— past public assistance and future child support—action against Cherokee Indian—jurisdiction of state court**

    The exercise of state court jurisdiction over actions against a Cherokee Indian living on the Indian reservation to recover debts for the payment of past public assistance under the AFDC program and to secure payments for future child support mandated by the AFDC program does not unduly infringe

on the self-governance of the Eastern Band of Cherokee Indians, and state courts thus have subject matter jurisdiction over such actions.

**3. Indians § 1— paternity action involving Cherokee Indians—lack of jurisdiction in state court**

The exercise of state court jurisdiction over a paternity action when the mother, child and putative father are all members of the Eastern Band of Cherokee Indians living on the reservation unduly infringes on tribal self-governance, and the state courts thus lack subject matter jurisdiction of such an action.

Justices WEBB and WHICHARD did not participate in the consideration or decision of this case.

APPEAL by plaintiff from the decision of a divided panel of the Court of Appeals, 75 N.C. App. 629, 331 S.E. 2d 145 (1985), affirming an order granting defendant's motion to dismiss pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure by *Snow, J.,* at the 16 July 1984 Civil Session of Superior Court, JACKSON County. Heard in the Supreme Court 18 December 1985.

*Lacy H. Thornburg, Attorney General, by Robert E. Cansler, Assistant Attorney General, for plaintiff-appellant.*

*Coward, Dillard, Cabler, Sossomon & Hicks, by Creighton W. Sossomon, for defendant-appellee.*

FRYE, Justice.

On 2 April 1982, plaintiff, by and through its Child Support Enforcement Agency, brought suit against defendant seeking to have him adjudicated the father of minor Kevin Jackson, to collect a debt owed to the State for past public assistance,[1] Aid to Families with Dependent Children (AFDC), paid for the minor's benefit, and to obtain an order requiring defendant to make future payments of support for the child. Annette Jackson, mother of Kevin Jackson, stated under oath that defendant is the biological father of her child. Defendant, Ms. Jackson, and Kevin are all members of the Eastern Band of Cherokee Indians residing on the Indian reservation. The office of the Jackson County Department of Social Services where Ms. Jackson applied for AFDC benefits

---

1. By accepting public assistance on behalf of a dependent child, the recipient is deemed to have made an assignment to the State or to the county from which such assistance was received and the State or county is subrogated to the right of the child or the person having custody to initiate a support action. N.C.G.S. § 110-137 (1978 & Cum. Supp. 1985).

and assigned her rights to support for her minor child is located within the exterior boundaries of the reservation.

Defendant filed a general answer to plaintiff's complaint but failed to raise any defenses under N.C.G.S. § 1A-1, Rule 12(b)(1) (lack of subject matter jurisdiction and (2) (lack of personal jurisdiction). Defendant filed a subsequent motion to dismiss pursuant to Rule 12(b)(1) and (2). This motion was granted by the trial court on 16 July 1984.

Plaintiff appealed to the Court of Appeals which affirmed the decision of the lower court as to dismissal on the Rule 12(b)(1) motion only. The Court of Appeals held that since defendant did not raise the 12(b)(2) motion before or with his answer, he was deemed to have waived his objection to the State's exercise of personal jurisdiction over him. On the issue of subject matter jurisdiction, the Court of Appeals found that federal law, 25 C.F.R. §§ 11.22 and 11.30, preempted State jurisdiction in this case. The court held that "after considering the well established rules of federal preemption, in conjunction with the two specific federal regulations . . . we hold that plaintiff must litigate this matter in the Court of Indian Offenses, and that our Courts of General Justice lack the necessary subject matter jurisdiction where the defendant is a member of the Eastern Band of Cherokee Indians who resides on the reservation." Plaintiff appeals the decision of the Court of Appeals pursuant to N.C.G.S. § 7A-30(2).

Plaintiff contends that the Court of Appeals erred in holding that the trial court lacked subject matter jurisdiction in this case where the defendant is a member of the Eastern Band of Cherokee Indians and resides on the Indian reservation because there are compelling reasons to require state jurisdiction in cases of this nature. Defendant argues that state jurisdiction in this case has been preempted by federal law, and therefore the matter is exclusively within the province of the Eastern Band's Court of Indian Offenses.[2]

I.

While the subject of Indian law is broad and "generalizations on this subject have become treacherous," *Mescalero Apache*

2. The Court of Indian Offenses for the Eastern Band of Cherokee Indians commenced operation on 28 July 1980.

*Tribe v. Jones*, 411 U.S. 145, 148, 36 L.Ed. 2d 114, 119 (1973), there are several basic principles which have been set forth by the United States Supreme Court in numerous decisions with respect to the boundaries between state regulatory authority and tribal self-government. In *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 65 L.Ed. 2d 665 (1980), the Court stated:

> Long ago the Court departed from Mr. Chief Justice Marshall's view that 'the laws of [a state] can have no force' within reservation boundaries. At the same time we have recognized that the Indian tribes retain 'attributes of sovereignty over both their members and their territory.' As a result, there is no rigid rule by which to resolve the question whether a particular state law may be applied to an Indian reservation or to tribal members. The status of the tribes has been described as 'an anomalous one and of complex character,' for despite their partial assimilation into American culture, the tribes have retained 'a semi-independent position . . . not as States, not as nations, not as possessed of the full attributes of sovereignty, but as *a separate people, with the power of regulating their internal and social relations*, and thus far not brought under the laws of the Union or of the State within whose limits they reside.'
>
> Congress has broad power to regulate tribal affairs under the Indian Commerce Clause, Art. 1, § 8, cl. 3. This congressional authority and the 'semi-independent position' of Indian tribes have given rise to two independent but related barriers to the assertion of state regulatory authority over tribal reservations and members. *First, the exercise of such authority may be pre-empted by federal law. Second, it may unlawfully infringe 'on the right of reservation Indians to make their own laws and be ruled by them.'* The two barriers are independent because either, standing alone, can be a sufficient basis for holding state law inapplicable to activity undertaken on the reservation or by tribal members. They are related, however, in two important ways. The right of tribal self-government is ultimately dependent on and subject to the broad power of Congress. Even so, traditional notions of Indian self-government are so deeply engrained in our jurisprudence that they have provided an important 'back drop'

against which vague or ambiguous federal enactments must always be measured. (Citations omitted.) (Emphases added.)

## II.

## A.

[1] We consider first whether the exercise of state-court jurisdiction in this case is preempted by federal law. The United States Supreme Court has "rejected the proposition that in order to find a particular state law to have been preempted by operation of federal law, an express congressional statement to that effect is required." *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 144, 65 L.Ed. 2d 665, 673. Rather, the State's power over Indian tribes must be determined in light of the federal government's plenary power over all Indians. *Wildcatt v. Smith*, 69 N.C. App. 1, 6, 316 S.E. 2d 870, 873 (1984). State action may be barred upon a showing of congressional intent to "occupy the field" and prohibit parallel state action. *Id. See also In re Halloway*, No. 20519 (Utah Dec. 5, 1986) (Lexis, Utah library, Utah file).

Defendant cites no federal statutes but refers us instead to two federal regulations which he contends preempt the exercise of state court subject matter jurisdiction in the case *sub judice*.

25 C.F.R. § 11.22 *Jurisdiction* provides:

> The Court of Indian Offenses shall have jurisdiction of all suits wherein the defendant is a member of the tribe or tribes within their jurisdiction, and of all other suits between members and non-members which are brought before the courts by stipulation of both parties. No judgment shall be given on any suit unless the defendant has actually received notice of such suit and ample opportunity to appear in court in his defense . . . .

25 C.F.R. § 11.22 (1986).

25 C.F.R. § 11.30 *Determination of paternity and support* provides:

> The Court of Indian Offenses shall have jurisdiction of all suits brought to determine the paternity of a child and to obtain a judgment for the support of the child. A judgment of the court establishing the identity of the father of the child

shall be conclusive of that fact in all subsequent determinations of inheritance by the Department of the Interior or by the Court of Indian Offenses.[3]

25 C.F.R. § 11.30 (1986).

Defendant contends that these two regulations establish the exclusive jurisdiction of the Court of Indian Offenses over all of the claims brought against him by the State. He emphasizes the parallel wording found in both regulations, that the Court of Indian Offenses "shall have jurisdiction of *all* suits . . . ." 25 C.F.R. §§ 11.22 and 11.30 (1986). He interprets this wording as depriving the State courts of subject matter jurisdiction in the instant case. The language of these regulations, defendant contends, clearly shows that the intent of Congress was to preempt the entire field of jurisdiction of state courts over Indian defendants in civil actions, once the Tribal Court system is mobilized.

We do not agree. These two regulations form part of the enabling legislation of the Court of Indian Offenses. We believe that these regulations merely enable the Court of Indian Offenses to exercise original jurisdiction over the various types of actions and categories of people described therein. We do not find that these enabling regulations, standing alone, are so pervasive as to "occupy the field" in this area and accordingly preempt the State from exercising any jurisdiction that it may already lawfully possess. Nor do we believe that the mere establishment of such a court necessarily deprives the State of all such jurisdiction. *Contra, Wildcatt v. Smith*, 69 N.C. App. 1, 316 S.E. 2d 870.

B.

As a general proposition, the states have only such power over the affairs of Indians living on a reservation as is granted by Congress. *See* Bridgers, *An Historical Analysis of the Legal Status of the North Carolina Cherokees*, 58 N.C.L. Rev. 1075, 1129 (1980). However, the Treaty of New Echota, 29 December 1835, United States—Cherokee Indians, 7 Stat. 478 (ceding all remain-

---

3. Federal regulations 25 C.F.R. §§ 11.22 and 11.30 were drafted under authority granted by Congress in 25 U.S.C. § 2 (1832) which provides that "the Commissioner of Indian Affairs shall, under the direction of the Secretary of the Interior, and agreeably to such regulations as the president may prescribe, have the management of all Indian affairs and of all matters arising out of Indian relations."

ing Cherokee territory east of the Mississippi) gave the State of North Carolina jurisdiction over the individuals and families who remained in the State when the rest of the Cherokee were removed to Oklahoma. *Eastern Band of Cherokee Indians v. United States*, 117 U.S. 288, 29 L.Ed. 880 (1866) ("The Cherokee Trust Funds"). While subsequent federal action has clearly eroded the State's ability to exercise this jurisdiction, *see Eastern Band of Cherokee Indians v. Lynch*, 632 F. 2d 373, 377-78 (4th Cir. 1980) (cites several areas where federal law currently preempts state action), nothing presently before this Court convinces us that federal law preempts the exercise of subject matter jurisdiction by this State's courts in the instant case.[4] We therefore disagree with the Court of Appeals' conclusion that federal law preempts the exercise of subject matter jurisdiction by our State courts in this case.

## C.

Having disposed of the doctrine of federal preemption as a barrier, we next consider whether the exercise of state court jurisdiction unduly infringes[5] on the self-governance of the Eastern Band of Cherokee Indians. The appropriate test is stated in *Williams v. Lee*, 358 U.S. 217, 220, 3 L.Ed. 2d 251, 254 (1959), which provides that:

> Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of the reservation Indians to make their own laws and be ruled by them.

The *Williams* test is principally applicable in situations involving a non-Indian party.[6] *McClanahan v. Arizona State Tax*

---

4. Neither Public Law 280 (ceding to various states criminal and civil jurisdiction over named Indian tribes and providing a mechanism for other states to obtain jurisdiction over reservation Indians within their boundaries) nor Title IV of the 1968 Indian Civil Rights Act (repealing portions of Public Law 280 and substituting a different mechanism for the extension of state jurisdiction) divested states of jurisdiction properly assumed prior to the enactment of the statute. *Three Affiliated Tribes v. Wold Engineering*, 467 U.S. 138, 81 L.Ed. 2d 113 (1984).

5. This has been commonly referred to as the infringement test. *See* S. Sherick, *State Jurisdiction Over Indians As A Subject of Federal Common Law: The Infringement-Preemption Test*, 21 Ariz. L. Rev. 85 (1979).

6. The instant case involves an Indian defendant and a non-Indian plaintiff (Jackson County). Ms. Jackson's right to child support was assigned to the county

*Commission*, 411 U.S. 164, 179, 36 L.Ed. 2d 129, 140 (1973). "In these situations, both the tribe and the state could fairly claim an interest in asserting their respective jurisdictions." *Id.* This infringement test "was designed to resolve the conflict by providing that the State could protect its interest up to the point where tribal self-government would be affected." *Id.*

In *New Mexico ex rel. Dept. of Human Services v. Jojola*, 99 N.M. 500, 660 P. 2d 590, *cert. denied*, 464 U.S. 803, 78 L.Ed. 2d 69 (1984), the New Mexico Supreme Court held that the state court had subject matter jurisdiction over an action by the New Mexico Department of Human Services (DHS) to determine whether an Indian defendant was the natural father of a minor child and to require defendant to make monthly child support payments. The court, applying the *Williams* test, found no Acts of Congress governing jurisdiction in the case, and therefore proceeded to determine whether the state action infringed on the right of the reservation Indians to make their own laws and be ruled by them. Three criteria were found to bear on the question of state court jurisdiction: (1) whether the parties are Indians or non-Indians, (2) whether the cause of action arose within the Indian reservation, and (3) the nature of the interest to be protected. *Id.* at 502-3, 660 P. 2d at 592. The court in *Jojola* found that the action involved an Indian defendant and a non-Indian plaintiff (DHS), since the natural mother assigned her right to support to DHS when she accepted public assistance. The cause of action arose outside of the Indian reservation when "[the mother] filed and obtained public assistance and assigned her support rights to DHS." *Id.* at 503, 660 P. 2d at 593. The court then balanced the interest of the Indians (to govern themselves) against that of the State (the uniform enforcement of the AFDC program in New Mexico) and found no interference with the tribe's interest on the part of the state.

We consider the three criteria used by the New Mexico Supreme Court to be instructive on the issue of infringement. In this case, like *Jojola*, the plaintiff, Jackson County, is a non-Indian, and the defendant is an Indian. With respect to the second criterion, however, we are not persuaded by the New Mexico

when she accepted AFDC benefits. *See Settle v. Beasley*, 309 N.C. 616, 308 S.E. 2d 288 (1983).

court's reliance on the fact that the cause of action arose outside of the reservation when the mother filed and obtained public assistance and assigned her support rights to DHS. The foundation for the cause of action in both *Jojola* and the case *sub judice* is the determination of parentage; for unless defendant is the father of the child, there is no basis for requiring him to pay child support or reimburse the State for payments made by it. In any event, in the instant case, even the application for benefits was executed by the mother at the social services office on the reservation where the mother, the child and the defendant resided.

The final consideration requires a weighing of the relative interests affected by the exercise of state court jurisdiction. Plaintiff asserts as its interest the maintenance of the AFDC program in this State, while the interest asserted by the defendant is that of tribal self-governance. For purposes of considering the relative interests in this case, we find it necessary to consider separately the causes of action: (1) to determine the paternity of a child where the defendant is an Indian living on the reservation; and (2) to collect a debt owed to the State for past public assistance and to obtain a judgment for future child support.

[2] We first consider the jurisdiction of state courts over actions to collect debts owed to the State for public assistance. As a condition of participation in the AFDC program, the State must operate a Child Support Enforcement Program, 42 U.S.C. § 602(27), to secure support for the minor child from his natural parents or from any other person legally liable for the child's support. This program must be operated on a statewide basis in accordance with equitable standards for administration that are mandatory throughout the State. 45 C.F.R. 302.10(a). However, the Court of Indian Offenses is an entity created and regulated by the federal government. The State of North Carolina is therefore without power to require the tribal court to enforce debts owed to the State from persons legally liable for the child's support. The ultimate penalty for failure to comply with the required enforcement of the AFDC programs is loss of federal funding. The competing interest asserted by the defendant is that of tribal self-governance. However, we find before us nothing which suggests that the tribe's interest in self-governance would be significantly affected by the exercise of concurrent state and tribal court jurisdiction over actions to collect debts lawfully owed to the State.

Jackson Co. v. Swayney

We find, therefore, that the exercise of state court jurisdiction over causes of action to recover debts for payment of past public assistance does not unduly infringe on the interest of Indian self-governance.

The State's interest in exercising jurisdiction over causes of action for future child support is in essence the same state interest in exercising jurisdiction over actions for debts for payment of past public assistance — to secure payments by persons legally liable for a child's support as mandated by the AFDC program. Thus we find that the State's exercise of jurisdiction over actions for future child support mandated by the AFDC program likewise does not unduly infringe on tribal self-governance.

[3] A more difficult question arises when the state courts attempt to exercise jurisdiction over actions to determine paternity where the defendant is an Indian living on the reservation. The determination of the paternity of an Indian child is of special interest to tribal self-governance, the right of reservation Indians to make their own laws and be governed by them. Such determination strikes at the essence of the tribe's internal and social relations.[7] Thus, exclusive tribal court jurisdiction over the determination of paternity, where the defendant is an Indian living on the reservation, is especially important to tribal self-governance. The State's interest in having this matter litigated in its own courts is less compelling. We are aware that in cases referred to the Child Support Enforcement Program by the AFDC Program when paternity has not yet been established, the State, through its Child Support Enforcement Agency, must attempt to establish paternity by court order or legal process established under State law; or by acknowledgment if under the State law such acknowledgment has the same legal effect as court-ordered paternity. 45 C.F.R. 303.5. However, the State may resort to the Court of Indian Offenses to secure a judgment or order determining the paternity of the child, thus meeting this requirement.

---

7. 25 C.F.R. § 11.30 *Determination of Paternity and Support,* for example, provides that, "A judgment of the Court [of Indian Offenses] establishing the identity of the father of the child shall be conclusive of that fact in all subsequent determinations of *inheritance* by the Department of the Interior or by the Court of Indian Offenses." (Emphasis added.)

In *Fisher v. District Court*, 424 U.S. 382, 47 L.Ed. 2d 106 (1976), the United States Supreme Court, applying the infringement test, held that the exercise of state subject matter jurisdiction over a suit involving an adoption proceeding, where all of the parties were members of the Northern Cheyenne Tribe living on the reservation and the dispute arose on the reservation, interfered with the tribe's power of self-governance.[8] The Court stated:

> State-court jurisdiction plainly would interfere with powers of self-government conferred upon the Northern Cheyenne Tribe and exercised through the Tribal Court. It would subject a dispute arising on the reservation among reservation Indians to a forum other than the one they have established for themselves. As the present record illustrates, it would create a substantial risk of conflicting adjudications affecting the custody of the child and would cause a corresponding decline in the authority of the Tribal Court.

*Id.* at 387-88, 47 L.Ed. 2d at 112. Both the *Fisher* case and the case *sub judice* involve a civil proceeding requiring the determination of matters of great importance to the internal and social relations of tribal members. In *Fisher*, the cause of action required a determination of the respective rights of the Indian litigants regarding the legal parentage of an Indian child, while the cause of action here requires a determination of the biological parentage of an Indian child. As the Court found in *Fisher*, we find in the instant case that concurrent state and tribal jurisdiction over paternity would create a substantial risk of conflicting adjudication concerning respective rights of Indians living on the reservation and would undermine the authority of the tribal court. We hold, therefore, that the exercise of state court jurisdic-

---

8. We are not unmindful of the fact that a governmental agency is plaintiff in the instant case, whereas in *Fisher* both plaintiff and defendant were Indians. However, the cause of action in both cases requires determination of the respective rights between members of an Indian tribe residing on the reservation. In addition, the Court's reasoning in *Fisher* that a state, in asserting jurisdiction over cases between two Indians, must *at least* meet the same standards for exercising jurisdiction over cases between Indians and non-Indians indicates that the standard for establishing whether jurisdiction infringes on tribal self-governance in the case *sub judice* is not higher than the standard applied by the United States Supreme Court in *Fisher*.

tion over paternity actions where, as here, the mother, the child, and the putative father are all Indians living on the reservation unduly infringes on tribal self-governance.

For all of the reasons stated in this opinion, we conclude that our State courts lack subject matter jurisdiction to determine paternity in the instant case where the child, mother and defendant are members of the Eastern Band of Cherokee Indians residing on the reservation. Once paternity is established, our courts do have subject matter jurisdiction over causes of action brought by the State pursuant to requirements of the AFDC program to collect a debt owed to the State for past public assistance and to obtain a judgment for future child support. The decision of the Court of Appeals is therefore affirmed in part and reversed in part.

This cause is remanded to the Court of Appeals for further remand to the trial court for further proceedings not inconsistent with this opinion. Upon remand, if paternity is contested, the plaintiff may apply to the Superior Court, Jackson County, for a stay of proceedings in that court pending the filing and final disposition of an appropriate proceeding in the Court of Indian Offenses to determine the paternity of the child.

Affirmed in part, reversed in part and remanded.

Justices WEBB and WHICHARD did not participate in the consideration or decision of this case.