NORTH CAROLINA DEPARTMENT OF CORRECTION, Petitioner-Appellant v. MICHAEL McKIMMEY, Respondent-Appellee

No. COA00-1528

(Filed 2 April 2002)

**Public Officers and Employees— termination—probation/ parole officer—grossly inefficient job performance**

The trial court did not err by upholding the State Personnel Commission's recommended decision reinstating respondent probation/parole officer with back pay and attorney fees after he was terminated for alleged grossly inefficient job performance when he failed to turn in the necessary paperwork (DAPP-1B) for a parolee's parole violation charges and the parolee thereafter shot and killed a Maryland State Trooper, because: (1) respondent's failure to submit the DAPP-1Bs for a parolee's three misdemeanor assault charges was not a grossly inefficient job performance justifying his termination; (2) there existed insufficient evidence that respondent's failure to submit the DAPP-1Bs resulted in the creation of the potential for death or serious bodily injury as required by N.C. Admin. Code tit. 25, r. 1J.0606; and (3) although the trial judge in a separate letter of memorandum discussed the use of a proximate causation analysis in its interpretation of N.C. Admin. Code tit. 25, r. 1J.0606, he did not rely on such an analysis in his final order.

Appeal by petitioner from order entered 15 September 2000 by Judge Henry V. Barnette, Jr., in Wake County Superior Court. Heard in the Court of Appeals 8 November 2001.

*Attorney General Roy Cooper, by Assistant Attorney General J. Philip Allen for petitioner-appellant.*

*D. Keith Teague, P.A., by D. Keith Teague and Danny Glover, Jr., for respondent-appellee.*

BRYANT, Judge.

On 20 November 1995, petitioner North Carolina Department of Correction (NCDOC) dismissed respondent probation/parole officer Michael McKimmey pursuant to N.C. Admin. Code tit. 25, r. 1J.0606 for grossly inefficient job performance. After an internal appeal within NCDOC, respondent's dismissal was upheld by the Secretary of the Department of Correction. On 6 March 1996, respondent filed a petition for a contested hearing with the Office of Administrative Hearings. On 18 December 1997, Administrative Law Judge Robert Roosevelt Reilly, Jr. issued a recommended decision that respondent be reinstated with back pay and attorney fees. On 23 July 1998, the State Personnel Commission adopted Judge Reilly's recommended decision and petitioner filed a petition for judicial review.

This matter was heard before the Honorable Henry V. Barnette, Jr., Superior Court Judge presiding at the 20 March 2000 session of Wake County Superior Court. By order filed 15 September 2000, the decision of the State Personnel Commission was affirmed. Petitioner appealed.

The underlying facts of this case are not in dispute. Respondent began service as a probation/parole officer in January 1994. Respondent assumed supervision of parolee Donovan Ault (a.k.a. Ivan Lovell) beginning 17 June 1994. On 24 August 1995, Ault was arrested and charged with misdemeanor assault with a deadly weapon for stabbing a man several times in the chest, shoulder and arm with a screwdriver. Respondent was aware of this arrest, but did not submit an offense report form (DAPP-1B) to the Parole Commission.

Ault was arrested again on 6 September 1995 and charged with two counts of misdemeanor assault with a deadly weapon for incidents involving his ex-girlfriend. Respondent learned of this arrest on 7 September 1995, however, he did not file a DAPP-1B for the two 6 September 1995 charges. Sometime between 14-17 October 1995, Ault absconded from North Carolina and traveled to Maryland, where he shot and killed a Maryland State Trooper. On 20 November 1995, peti-

tioner mailed to respondent a letter of dismissal for grossly ineffi-
cient job performance pursuant to N.C. Admin. Code tit. 25, r.
1J.0606. The dismissal letter read in pertinent part:

> On September 7, 1995 according to your own narrative entry,
> the parolee reported to you that his ex-girlfriend had him
> arrested for multiple charges. According to policy you failed to
> submit a DAPP-1B, "Offense Report" to the North Carolina Post
> Release Supervision and Parole Commission for each pending
> assault charge (AWDW 95 CR 4518 and 4519) within thirty (30)
> calender days; the deadline for which would have been October
> 6, 1995. Additionally, after receiving information from the parolee
> and your brother, you not only failed to verify the reported pend-
> ing charges, you also failed to determine if there were any other
> pending charges by utilizing all available resources . . . .

> Moreover, your failure to throughly investigate these charges
> or other possible criminal acts through all available resources,
> prevented you from discovering a third charge of Assault with a
> Deadly Weapon (95 CR 4517) . . . . Additionally, your failure to fol-
> low the High Risk Supervision Level minimum requirement to
> conduct a collateral contact every thirty (30) days to determine
> possible criminal acts prevented you from discovering the
> Assault with the Deadly Weapon charge (95 CR 4517) . . . .

> Consequently, the required DAPP-1B "Offense Report" was
> not provided by you to the North Carolina Post Release
> Supervision and Parole Commission pursuant to policy and pro-
> cedures. Your failure to follow DAPP standard policy and proce-
> dures precluded the implementation of the departmental system
> which is designed to manage parolees who exhibit assaultive
> behavior. The end result is that a Maryland State Trooper may
> have died needlessly. Your failure to act in this case is considered
> to be gross inefficiency in the performance of duties in that your
> failure to act created the potential for death or serious bodily
> injury to the public.

At the time the dismissal letter was sent to respondent, petitioner
did not know that respondent was in fact previously aware of the 24
August 1995 arrest (95 CR 4517), but failed to submit a DAPP-1B con-
cerning that arrest.

---

Petitioner argues on appeal that: 1) the trial court erred in its
interpretation of N.C. Admin. Code tit. 25, r. 1J.0606, and 2) the trial

court's conclusion is unsupported by substantial evidence in the record. We disagree.

In reviewing the trial court's order, this Court must first determine whether the trial court applied the appropriate standard of review. *See Act-up Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997). If the appropriate standard was applied, we then determine if the trial court properly applied this standard to the issues presented. *See id.*

If a party presents to the trial court a question concerning statutory interpretation or errors in conclusions of law, *de novo* is the appropriate standard of review. *See Associated Mechanical Contractors, Inc. v. Payne*, 342 N.C. 825, 831, 467 S.E.2d 398, 401 (1996). If a party argues to the trial court that the underlying decision is unsupported by substantial evidence in the record, the whole record test is the appropriate standard of review. *See Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994). The "[superior] court *may even utilize more than one standard of review* if the nature of the issues raised so requires." *In re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993) (emphasis in original).

We first note the trial court applied the appropriate standards of review, in that it applied the *de novo* standard to petitioner's question of statutory interpretation and the whole record test to petitioner's arguments concerning the lack of substantial evidence supporting the underlying decision. We now must determine whether the trial court properly applied these standards.

Respondent was a career state employee who could only be terminated for just cause. Just cause would exist if respondent engaged in acts justifying dismissal pursuant to N.C. Admin. Code tit. 25, r. 1J.0606. N.C. Admin. Code tit. 25, r. 1J.0606 (October 1995) in pertinent part provides:

> (a) Dismissal on the basis of grossly inefficient job performance is administered in the same manner as for unacceptable personal conduct. Employees may be dismissed on the basis of a current incident of grossly inefficient job performance without any prior disciplinary action.

N.C. Admin. Code tit. 25, r. 1J.0614 (October 1995) defines grossly inefficient job performance in pertinent part:

  (f) Gross Inefficiency (Grossly Inefficient Job Performance)—A type of unsatisfactory job performance that occurs in instances in which the employee: fails to satisfactorily perform job requirements as specified in the job description, work plan, or as directed by the management of the work unit or agency; and, that failure results in:

    (1) the creation of the potential for death or serious bodily injury to an employee(s) or to members of the public or to a person(s) over whom the employee has responsibility . . . .

The trial court affirmed the decision of the State Personnel Commission and determined that respondent's failure to submit DAPP-1Bs for Ault's three misdemeanor assault charges was not a grossly inefficient job performance justifying his termination.

  Petitioner argues that the trial court erred when it concluded respondent's failure to submit DAPP-1Bs had to be causally linked to the resulting death of the Maryland State Trooper for respondent to have engaged in grossly inefficient job performance. Specifically, petitioner contends that for respondent's failure to submit DAPP-1B's to be considered a grossly inefficient job performance, these failures must result only *in the creation of the potential for death or serious bodily injury*—and not result in actual death or serious bodily injury. Due to the fact that respondent failed to submit the DAPP-1Bs, petitioner argues that respondent's failure resulted in the creation of the potential for death or serious bodily injury. We disagree.

  Based on this Court's reading of N.C. Admin. Code tit. 25, r. 1J.0606, it is uncontroverted that the regulation only requires the creation of the potential for death or serious bodily injury and does not require that actual death or serious bodily injury result. The trial court interpreted N.C. Admin. Code tit. 25, r. 1J.0606 only to require the creation of the potential for death or serious bodily injury. Therefore, we hold that the trial court did not err in its interpretation of law.

  Regarding the procedure for submitting a DAPP-1B, the State Personnel Commission adopted the administrative law judge's findings which read in pertinent part:

    26. A DAPP-1B is a report which a P/PO uses to advise the Parole Commission that a parolee under his supervision has com-

mitted a criminal offense in contravention of the parolee's parole agreement.

27. DAPP's policy concerning the filing of a DAPP-1B was set forth in the dismissal letter:

> Upon receipt of information that a parolee is suspected of violating his parole, the officer must initiate a complete and accurate investigation to determine whether there is validity in the charge . . . . If the parolee has been arrested and charged with an offense it is the duty of the officer to ascertain all of the facts about the violation from the police or other persons, and to interview the parolee for his version . . . . The officer's chief role, however, is to investigate and report violations of parole to the Parole Commission which has the final decision making authority in revocation matters . . . . The DAPP-1B "Offense Report" is to be submitted each time a parolee is charged with the following: all assaultive and sex related offenses, all felony offenses, and all alcohol and drug related driving offenses. A subsequent DAPP-1B must also be submitted on these cases when the disposition of the charge is determined.

28. It is DAPP's policy that the P/PO submit a DAPP-1B within 30 calender days after it is learned that a parolee under supervision has been charged with an assaultive criminal violation.

29. JDM Roy Daniels told the [respondent] that he did not have to submit a DAPP-1B on all misdemeanor charges because, if he did, he would never get all of his field work done.

30. To submit a DAPP-1B, the P/PO mails the DAPP-1B to the DAPP Supervision Office in Raleigh. Upon its receipt of such, the DAPP Supervision Office then mails the DAPP-1B to the Parole Commission Office.

31. After submitting a DAPP-1B, a P/PO does nothing further with respect to the underlying criminal charge until a court disposition of the criminal charge is made or unless he receives further instructions from the Parole Commission, whichever occurs first.

32. If after receiving a DAPP-1B the Parole Commission wishes to issue a parole warrant, it mails the DAPP Supervision Office a request for a PC-14.

33. A PC-14 is a report which a P/PO uses to advise the Parole Commission that a parolee under his supervision has violated his parole and upon which the P/PO makes a recommendation that the Parole Commission issue a parole warrant.

34. I/O Brickhouse, who had over six years experience as a P/PO, has never received a parole warrant after only filing a DAPP-1B.

35. Ray Griggs, a P/PO from Currituck County who had over eleven years experience as a P/PO, has never received a parole warrant after only filing a DAPP-1B.

36. Charles Mann, Sr., a member of the Parole Commission who had reviewed over 50,000 parole cases, testified that the Parole Commission does not issue a warrant based solely on the filing of a DAPP-1B.

37. The Parole Commission has discretion as to whether to request a PC-14 from the P/PO after receiving a DAPP-1B. Prior to the date of the [respondent's] dismissal, there was no statutory time limit in which the Parole Commission, after receiving a DAPP-1B, could request a PC-14.

38. Upon receipt of the request for a PC-14 from the Parole Commission, the DAPP Supervision Office mails the request for a PC-14 to the P/PO. The P/PO then completes the PC-14 and mails it to the DAPP Supervision Office. The DAPP Supervision Office mails the PC-14 to the Parole Commission.

39. Upon receipt of the PC-14, the Parole Commission has discretion to issue or not to issue a parole warrant. Prior to the date of the [respondent's] dismissal, there was no statutory time limit in which the Parole Commission, after receiving a PC-14, could issue a parole warrant.

40. In all of the cases in which the [respondent] had filed a DAPP-1B as a result of misdemeanor charges, the Parole Commission had never requested additional information or issued a warrant. The Commission had only instructed him to continue supervision of the case pending the outcome of the case in Court.

The trial court determined that these findings were sufficient to support the State Personnel Commission's conclusion that respondent's actions were not sufficient to justify dismissal based on

grossly inefficient conduct pursuant to N.C. Admin. Code tit. 25, r. 1J.0606.

For this Court to accept petitioner's argument that respondent's failure to file the necessary DAPP-1Bs created the potential for death or serious bodily injury, it must also logically follow that if respondent had submitted the DAPP-1Bs, the Parole Commission would have acted in some manner that would have stayed the creation of the potential for death or serious bodily injury.

In reviewing the evidence, however, it appears that the Parole Commission was not under any statutory obligation to process DAPP-1Bs in a specific time frame. The Parole Commission rarely, if ever, issued an arrest warrant based on the receipt of a DAPP-1B. Instead, the Parole Commission usually instructed the probation/parole officer to continue supervision pending disposition of the new charges. As previously stated in Findings of Fact No. 40 adopted by the State Personnel Commission, "[I]n all the cases in which [respondent] had filed a DAPP-1B as a result of misdemeanor charges the Parole Commission had never requested additional information or issued a warrant."

The evidence of record does not show that the submission of the DAPP-1Bs would have triggered a series of events that would have resulted in the revocation of Ault's parole, thus removing the potential for him to engage in malfeasance. Therefore, we find that there existed insufficient evidence that respondent's failure to submit the DAPP-1Bs resulted in the creation of the potential for death or serious bodily injury.

Petitioner also argues that the trial court erred in applying a proximate causation analysis in its interpretation of N.C. Admin. Code tit. 25, r. 1J.0606. We note that even though the trial court judge in a separate letter of memorandum discussed the use of a proximate causation analysis, he did not rely on such an analysis in his final order. Therefore, this assignment of error is overruled and the order of the trial court is affirmed.

AFFIRMED.

Judges McGEE and HUNTER concur.