J.C. HATCHER, Plaintiff v. HARRAH'S NC CASINO COMPANY, L.L.C., Defendant

No. COA01-712

(Filed 2 July 2002)

**1. Indians— gaming on Cherokee lands—failure to pay jackpot—non-Indian management company—state court jurisdiction—no preemption by federal act**

The Indian Gaming Regulatory Act did not preempt state court jurisdiction of an action brought by a non-Indian against a management company operating a gaming facility on Cherokee Indian lands for fraud and unfair trade practices arising from defendant's refusal to pay a jackpot that plaintiff allegedly won from a gaming machine in the facility because plaintiff's claims neither affect the Cherokee Tribe's internal governmental decisions nor directly relate to the regulation of gaming.

**2. Indians— gaming on Cherokee lands—failure to pay jackpot—non-Indian management company—infringement on Cherokee self-governance—remand for determination**

An action instituted by a non-Indian against a non-tribal management company operating a gaming facility on Cherokee Indian lands which arose from defendant's refusal to pay a jackpot that plaintiff allegedly won from a gaming machine in the facility must be remanded for the trial court to determine, pursuant to the criteria set forth in *Jackson County v. Swaney*, 319 N.C. 52, whether the exercise of state court jurisdiction would unduly infringe on the self-governance of the Eastern Bank of Cherokee Indians. In particular, the trial court should determine the nature of the activities in which plaintiff engaged and whether those activities are consistent with the public policy of this State.

Appeal by plaintiff from order entered 13 March 2001 by Judge Danny E. Davis in Jackson County District Court. Heard in the Court of Appeals 14 March 2002.

*McLean Law Firm, P.A., by Russell L. McLean, III, for plaintiff-appellant.*

*Coward, Hicks & Siler, P.A., by Monty C. Beck, for defendant-appellee.*

HUDSON, Judge.

Plaintiff appeals from an order granting defendant's motion to dismiss based on lack of subject matter jurisdiction. For the reasons given below, we reverse in part and remand to the district court for further proceedings.

The Indian Gaming Regulatory Act (the "IGRA") provides a statutory framework for the regulation of gaming activities on Indian lands. *See* 25 U.S.C.A. §§ 2701-2721 (West 2001). The parties here do not dispute that the gaming at issue is "Class III gaming." *See* 25 U.S.C.A. § 2703 (defining gaming classes). Class III gaming activities may be conducted on Indian lands pursuant to a Tribal-State compact, provided that, *inter alia*, the Indian tribe has authorized the activities, and the activities are permitted in the state in which the Indian lands are located. *See* 25 U.S.C.A. § 2710(d) (regulating Class III gaming).

In this case, the Eastern Band of Cherokee Indians (the "Tribe") and the State of North Carolina have entered into a Tribal-State compact. The compact authorizes the Tribe to operate certain specified types of Class III gaming on the reservation. The Tribe entered into a management agreement with defendant, pursuant to which defendant has "the exclusive right and obligation to develop, manage, operate and maintain" the Tribe's gaming facility.

Plaintiff operated a machine at the facility managed by defendant. Plaintiff alleges that the machine registered plaintiff a winner of $11,428.22, but that it did not pay out. Plaintiff informed employees of defendant that he had won but that he did not receive a pay-out. The manager refused to pay plaintiff. Plaintiff participated in a dispute resolution process before the Cherokee Tribal Gaming Commission. After the Cherokee Tribal Gaming Commission ruled against him, plaintiff filed this action in the state District Court in Jackson County, alleging that defendant refused to pay a jackpot he won from a gaming machine, and alleging that defendant had engaged in an unfair and deceptive trade practice and fraud. Defendant filed a motion to dismiss for lack of subject matter jurisdiction. *See* N.C.R. Civ. P. 12(b)(1).

**[1]** The district court ruled that its jurisdiction was preempted by the IGRA. Finding that it was without subject matter jurisdiction, the court granted defendant's motion to dismiss. We review *de novo* an order granting a motion to dismiss for lack of subject matter jurisdiction. *See Fuller v. Easley*, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001).

The analysis we must employ in this case was articulated by our Supreme Court in *Jackson County v. Swayney*, 319 N.C. 52, 352 S.E.2d 413 (1987), as a two-prong inquiry. The issue before the Court in *Swayney* was whether our state courts had jurisdiction to hear a paternity suit in which the mother, child, and putative father were all members of the Eastern Band of Cherokee Indians living on the Indian reservation, and the plaintiff agency was located off the reservation. The Court first considered whether federal law preempted state-court jurisdiction. *See id.* at 56, 352 S.E.2d at 415. Having found no preemption, the Court next considered whether the exercise of state-court jurisdiction "unduly infringe[d] on the self-governance of the Eastern Band of Cherokee Indians." *Id.* at 58, 352 S.E.2d at 417 (footnote omitted) (citing *Williams v. Lee*, 358 U.S. 217, 220, 3 L. Ed. 2d 251, 254 (1959)).

Federal preemption occurs when the federal government's regulation in an area is "comprehensive." *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 145, 65 L. Ed. 2d 665, 674 (1980). "State action may be barred upon a showing of congressional intent to 'occupy the field' and prohibit parallel state action." *Swayney*, 319 N.C. at 56, 352 S.E.2d at 415-16 (quoting *Wildcatt v. Smith*, 69 N.C. App. 1, 6, 316 S.E.2d 870, 874 (1984)). We hold that state-court jurisdiction is not preempted by federal law in this case.

Defendant cites *Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536 (8th Cir. 1996), in support of its contention that the IGRA preempts state-court jurisdiction. The Eighth Circuit held in *Gaming Corp.* that the IGRA "completely preempts *state laws regulating gaming* on Indian lands." *Id.* at 543 (emphasis added). While we agree that the IGRA preempts state laws regulating gaming, plaintiff here seeks state-court adjudication of a dispute between a non-Indian individual and a non-tribal management corporation, which is not the equivalent of "regulating" gaming activities.

The Eighth Circuit subsequently distinguished *Gaming Corp.* in a case involving a dispute between two companies that had attempted to negotiate a gaming management contract with the Potawatomi Indian Nation. *See Casino Res. Corp. v. Harrah's Entm't, Inc.*, 243 F.3d 435 (8th Cir. 2001). The Eighth Circuit observed that "*Gaming Corp.* dealt with the regulation of tribal gaming. In contrast, the instant case presents the issue of whether IGRA preempts state law claims by one non-tribal entity against another, when resolution requires some review of a contract terminating a gaming management arrangement between one of the parties and a tribal entity." *Id.* at 438 (citation omitted). The court further observed that while *Gaming Corp.* involved "the outcome of an Indian nation's internal governmental decisions, here the challenge is merely to the decisions of a management company." *Id.*

We find the Eighth Circuit's analysis instructive. Thus, although the IGRA does have some preemptive effect, we hold that it does not prevent our state courts from hearing claims such as the ones at issue here. Plaintiff's claims alleging unfair and deceptive trade practices and fraud are state-law claims that neither affect the Tribe's internal governmental decisions, nor directly relate to the regulation of gaming. *Cf. Saratoga County Chamber of Commerce Inc. v. Pataki*, 275 A.D.2d 145, 157, 712 N.Y.S.2d 687, 695-96 (2000) (determining that an action contesting the validity of a tribal-state compact was not pre-

**HATCHER v. HARRAH'S N.C. CASINO CO.**

[151 N.C. App. 275 (2002)]

empted because the "IGRA says nothing specific about how we determine whether a state and tribe have entered into a valid compact," and "[s]tate law must determine whether a state has validly bound itself to a compact" (internal quotation marks omitted)).

Furthermore, Congress has expressly left certain questions of jurisdiction to be decided by the tribe and the state. The IGRA provides that a Tribal-State compact

may include provisions relating to—

(i) the application of the criminal and civil laws and regulations of the Indian tribe or the State that are directly related to, and necessary for, the licensing and regulation of such activity;

(ii) the allocation of criminal and civil jurisdiction between the State and the Indian tribe necessary for the enforcement of such laws and regulations . . . .

25 U.S.C.A. § 2710(d)(3)(C). It cannot be said that Congress intended to "preempt the field" when it expressly ceded the decision regarding who would have jurisdiction over laws and regulations related to gaming activities to the tribe and state.

*Eastern Band of Cherokee Indians v. North Carolina Wildlife Resources Commission*, 588 F.2d 75 (4th Cir. 1978), also cited by defendant, is distinguishable. The issue in that case was whether North Carolina could enforce its fishing licensing laws on the reservation against non-members of the Tribe. *See* 588 F.2d at 77. The Fourth Circuit held that "the strong federal policy supporting the [Tribe's] fishing program and the significant federal efforts sustaining it demonstrate an intention to preclude state regulation of non-member fishing on the [Tribe's] reservation." *Id.* at 78. We agree with defendant that there is a strong federal policy in this case supporting the Tribe's authority to regulate gaming. However, plaintiff's claim is at most incidental to the regulation of gaming.

[2] We turn next to the question of whether jurisdiction in state court would "unduly infringe[] on the self-governance of the Eastern Band of Cherokee Indians." *Swayney*, 319 N.C. at 58, 352 S.E.2d at 417 (footnote omitted). The *Swayney* Court identified three criteria that are "instructive on the issue of infringement." *Id.* at 59, 352 S.E.2d at 418. These criteria are "(1) whether the parties are Indians or non-Indians, (2) whether the cause of action arose within the Indian reser-

vation, and (3) the nature of the interest to be protected." *Id.* at 59, 352 S.E.2d at 417 (citing *New Mexico ex rel. Dept. of Human Services v. Jojola*, 99 N.M. 500, 660 P.2d 590, *cert. denied*, 464 U.S. 803, 78 L. Ed. 2d 69 (1983)).

Full consideration of the third factor identified in *Swayney* requires remand to the district court for further proceedings. Specifically, defendant contended at oral argument that plaintiff claims defendant breached a contract that would have been illegal but for the IGRA. Neither party discussed this issue in their briefs, and the complaint did not allege breach of contract. If defendant is correct, the interest at stake here—enforcement of an illegal gambling obligation—is not one that our State, as a matter of public policy, protects. *See* N.C. Gen. Stat. § 14-292 (2001) (making gambling a Class 2 misdemeanor); N.C. Gen. Stat. § 16-1 (2001) ("Gaming and betting contracts void."); *Cole v. Hughes*, 114 N.C. App. 424, 428-29, 442 S.E.2d 86, 89 (stating that "North Carolina public policy is against gambling and lotteries," and affirming dismissal of a claim that "sought to enforce a contract or joint venture which is illegal and against the public policy of North Carolina"), *disc. review denied*, 336 N.C. 778, 447 S.E.2d 418 (1994). Thus, if plaintiff seeks to recover gambling proceeds, the State of North Carolina would have no interest in protecting plaintiff's right to enforce his contract, although the Tribe may.

On the record before us, we have no evidence to review and nothing more than the unverified allegations of the complaint. Accordingly, we are unable to determine whether plaintiff's activities fall within the definitions of N.C.G.S. § 14-292 or N.C.G.S. § 16-1. *See, e.g., State v. Crabtree*, 126 N.C. App. 729, 738-40, 487 S.E.2d 575, 580-81 (1997) (interpreting N.C.G.S. § 14-306); *Collins Coin Music Co. v. N.C. Alcoholic Beverage Control Comm.*, 117 N.C. App. 405, 451 S.E.2d 306 (1994) (same), *disc. review denied*, 340 N.C. 110, 456 S.E.2d 312 (1995).

Thus, we remand to the district court for further proceedings. On remand, the district court should determine whether state-court jurisdiction would "unduly infringe[] on the self-governance of the Eastern Band of Cherokee Indians," by applying the factors identified in *Swayney*. In particular, the district court should determine the nature of the activities in which plaintiff engaged and whether those activities are inconsistent with the public policy of this State. If so, the third *Swayney* factor counsels against a finding of subject matter jurisdiction.

In sum, we reverse the trial court's conclusion that the IGRA preempts state-court jurisdiction over a dispute of this nature. We remand to the trial court for further consideration, in light of evidence and arguments presented before it, of the issue of subject matter jurisdiction based on the *Swayney* factors.

Reversed in part and remanded.

Judges MARTIN and THOMAS concur.