J.C. HATCHER, Plaintiff v. HARRAH'S NC CASINO COMPANY, LLC, Defendant

No. COA04-823

(Filed 15 March 2005)

**1. Indians— jurisdiction—Eastern Band of Cherokees— casino gambling dispute**

The trial court correctly concluded that it did not have subject-matter jurisdiction over a dispute concerning the payment of a prize won at a casino owned by the Eastern Band of the Cherokee Indians. While the trial court erred by concluding that it lacked jurisdiction because gambling violated North Carolina public policy, the Cherokees have a greater interest than the State in resolving patron disputes with the casino, have policies and

procedures for resolving such disputes, and the exercise of state court jurisdiction would unduly infringe on the self-governance of the Cherokees.

**2. Indians— jurisdiction—Eastern Band of Cherokees— casino gambling—civil actions**

The North Carolina State Courts did not have jurisdiction over an unfair trade practices claim arising from a disputed prize at a casino owned by the Eastern Band of the Cherokee Indians. The provision of the Compact between the Eastern Band of Cherokee Indians and the State of North Carolina allowing State courts to apply and enforce criminal and regulatory laws does not grant jurisdiction over civil actions of this sort.

**3. Appeal and Error— failure to cite authority—dismissal of argument**

The failure to cite authority resulted in the dismissal of an appellate argument concerning jurisdiction of a dispute arising in a casino owned by the Eastern Band of the Cherokee Indians.

Appeal by plaintiff from judgment entered 2 February 2004 by Judge Richlyn D. Holt in Jackson County District Court. Heard in the Court of Appeals 3 February 2005.

*McLean Law Firm, P.A., by Russell L. McLean, III, for the plaintiff.*

*Bridgers & Ridenour, PLLC, by Ben Oshel Bridgers, for the defendant.*

TIMMONS-GOODSON, Judge.

J.C. Hatcher ("plaintiff") appeals an order of the trial court granting a motion by Harrah's NC Casino Company ("defendant") to dismiss his complaint for unfair and deceptive trade practices for lack of subject matter jurisdiction. For the reasons stated herein, we affirm the order of the trial court.

The factual and procedural history of this case is as follows: Harrah's Cherokee Casino in Cherokee, North Carolina, is owned by the Eastern Band of Cherokee Indians[1] and managed by defendant. Plaintiff alleges that on 3 May 1998, he inserted money into a machine at the casino which returned a display announcing that plaintiff won

---

1. The Eastern Band of Cherokee Indians is not a party to this action.

HATCHER v. HARRAH'S N.C. CASINO CO., LLC

[169 N.C. App. 151 (2005)]

a prize of $11,428.22. Plaintiff attempted to collect his winnings, but was told by a member of the casino staff that the prize would not be awarded to him.

After initially filing a complaint with the Cherokee Tribal Gaming Commission, plaintiff filed the underlying complaint in Jackson County District Court on 31 August 2000, alleging that the casino's failure to award the prize to plaintiff constitutes an unfair and deceptive trade practice. In response to the complaint, defendant filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Civil Procedure Rule 12(b)(1). The trial court granted defendant's motion to dismiss, concluding that "[t]he Indian Gaming Regulatory Act preempts the exercise of authority by this Court of the gaming dispute which is the underlying basis for the Plaintiff's claim." Plaintiff appealed the trial court's order to this Court.

In deciding *Hatcher v. Harrah's N.C. Casino Co.*, 151 N.C. App. 275, 565 S.E.2d 241 (2002) ("*Hatcher I*"), this Court was guided by a two-prong test set forth in *Jackson Co. v. Swayney*, 319 N.C. 52, 352 S.E.2d 413 (1987). The two-prong test requires our courts to consider the following: (1) "whether federal law preempted state-court jurisdiction;" and (2) "whether the exercise of state-court jurisdiction 'unduly infringe[d] on the self-governance of the Eastern Band of Cherokee Indians.'" *Hatcher I*, 151 N.C. App. at 277, 565 S.E.2d at 243 (citing *Swayney*, 319 N.C. at 56, 565 S.E.2d at 415, and quoting *Swayney*, 319 N.C. at 58, 565 S.E.2d at 417). With regard to the first prong, this Court held that "state-court jurisdiction is not preempted by federal law in this case." *Id.* at 278, 565 S.E.2d at 243. With regard to the second prong, we noted that "[t]he *Swayney* Court identified three criteria that are 'instructive on the issue of infringement.' These criteria are '(1) whether the parties are Indians or non-Indians, (2) whether the cause of action arose within the Indian reservation, and (3) the nature of the interest to be protected.'" *Id.* at 279-80, 565 S.E.2d at 244 (quoting *Swayney*, 319 N.C. at 59, 352 S.E.2d at 417-18). We held that "[f]ull consideration of the third factor identified in *Swayney* requires remand to the district court for further proceedings." *Id.* at 280, 565 S.E.2d at 244. The *Hatcher I* Court issued the following mandate to the trial court:

> On remand, the district court should determine whether state-court jurisdiction would "unduly infringe[] on the self-governance of the Eastern Band of Cherokee Indians," by applying the factors identified in *Swayney*. In particular, the district court should

determine the nature of the activities in which plaintiff engaged and whether those activities are inconsistent with the public policy of this State. If so, the third *Swayney* factor counsels against a finding of subject matter jurisdiction.

*Id.* at 280, 565 S.E.2d at 244.

On remand, the trial court conducted a hearing "at which legal counsel for the parties appeared, with the Defendant presenting testimony of witnesses and both attorneys presenting documentary evidence and both counsel presenting oral argument." Upon considering the evidence and the arguments, the trial court entered an order wherein it took judicial notice of the following statutes, regulations and agreements:

(A) the Indian Gaming Regulatory Act, 25 U.S.C. 2710 et seq.;

(B) the Tribal-State Compact Between the Eastern Band of Cherokee Indians and the State of North Carolina, approved September 22, 1994;

(C) the Tribal Gaming Ordinance of the Eastern Band of Cherokee Indians, the Cherokee Code, Chapter 16;

(D) the Management Agreement between The Eastern Band of Cherokee Indians and Harrah's NC Casino Company, LLC, dated June 19, 1996;

(E) the General Statutes of the State of North Carolina.

The trial court's order contained the following pertinent finding of fact:

(J) That in May of 1998 the Plaintiff was in the Cherokee Casino playing an electronic game manufactured by Leisure Time, the game being a five card poker game which had been approved as a game involving skill or dexterity by the Certification Commission created by the Tribal-State Compact.

Based on its findings of fact, the trial court entered the following conclusions of law:

1. That the nature of the Plaintiff's activities in the Cherokee Casino are the type of acts which are inconsistent with the public policy of this State.

2. That by virtue of Section 16-12.12 of the Cherokee Gaming Ordinance, the Plaintiff consented to the jurisdiction of the Tribe for these types of activities.

3. That the Compact between the Eastern Band of Cherokee Indians and the State of North Carolina does not consent to or grant civil jurisdiction to the State of North Carolina with respect to gaming activities on the Cherokee Indian Reservation.

4. That the Plaintiff's Unfair Trade Practice claim for relief arose out of the Plaintiff's activities at the Cherokee Casino.

5. That exercise of jurisdiction in the present case would unduly infringe upon the self-governance of the Eastern Band of Cherokee Indians.

The trial court thus determined that it did not have subject matter jurisdiction, and dismissed plaintiff's complaint for a second time. It is from this order that plaintiff appeals.

---

The issues presented on appeal are whether the trial court erred by concluding that (I) it did not have subject matter jurisdiction because gambling was against North Carolina public policy; (II) the State of North Carolina has no civil jurisdiction with respect to gaming activities on the Cherokee Indian Reservation; and (III) plaintiff consented to the jurisdiction of the tribe for gaming activities conducted on the reservation.

[1] Plaintiff first argues that the trial court erred by concluding that the court lacked subject matter jurisdiction. Specifically, plaintiff argues that state court has jurisdiction because the Eastern Band of Cherokee Indians is not a party to the action, and state court jurisdiction "does not infringe in any way upon the political integrity of the Eastern Band or unduly threaten its rights of self-governance." We disagree.

"[T]he standard of review on a motion to dismiss under Rule 12(b)(1) for lack of jurisdiction is *de novo*." *Country Club of Johnston Cty., Inc. v. U.S. Fidelity & Guar. Co.*, 150 N.C. App. 231, 238, 563 S.E.2d 269, 274 (2002) (citing *Fuller v. Easley*, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001)). Article 37 of our criminal law statutes generally makes it illegal to engage in organized gambling for cash prizes in North Carolina. N.C. Gen. Stat. § 14-289-14-309.20 (2003). Specifically, N.C. Gen. Stat. § 14-306.1(a) provides that "[i]t

shall be unlawful for any person to operate, allow to be operated, place into operation, or keep in that person's possession for the purpose of operation any video gaming machine as defined in subsection (c) of this section." (2003). Subsection (c) provides that "a video gaming machine means a slot machine as defined in G.S. 14-306(a) and other forms of electrical, mechanical, or computer games such as . . . [a] video poker game or any other kind of video playing card game." N.C. Gen. Stat. § 14-306.1(c)(1) (2003). However, the statute provides the following exception: "This section does not make any activities of a federally recognized Indian Tribe unlawful or against public policy, which are lawful for any federally recognized Indian Tribe under the Indian Gaming Regulatory Act, Public Law 100-497." N.C. Gen. Stat. § 14-306.1(n) (2003). Thus, the trial court erred by concluding that North Carolina public policy is violated by the video poker machine operated by the Eastern Band of Cherokee Indians. However, our analysis of state court subject matter jurisdiction does not end here.

We now turn to the second prong of the two-prong test identified in *Swayney*, which more broadly instructs us to weigh the interests of the Indians in settling this dispute against the interests of the state. As evidenced by our extensive statutory law prohibiting gambling, and as noted by this Court in *Hatcher I*, the state has very little interest in protecting plaintiff's right to engage in an activity that, but for the Indian Gaming Regulatory Act, would be contrary to our public policy. *See Hatcher I*, 151 N.C. App. at 280, 565 S.E.2d at 244 ("[I]f plaintiff seeks to recover gambling proceeds, the State of North Carolina would have no interest in protecting plaintiff's right to enforce his contract, although the Tribe may.").

Conversely, "[t]he Cherokee Indians have an interest in making their own laws and enforcing them." *Jackson County ex rel. Smoker v. Smoker*, 341 N.C. 182, 184, 459 S.E.2d 789, 791 (1995) (citing *Williams v. Lee*, 358 U.S. 217, 3 L. Ed. 2d 251 (1959)). The tribe has in fact established a procedure for resolving disputes arising out of gaming activity. Chapter 16 of The Cherokee Code sets forth the tribe's procedure for resolving patron disputes:

Any person who has any dispute, disagreement or other grievance with the gaming operation that involves currency, tokens, coins, or any other thing of value, may seek resolution of such dispute from the following persons and in the following order:

(a) A member of the staff relevant of the gaming operation;

(b) The supervisor in the area of the relevant gaming operation in which the dispute arose;

(c) The manager of the relevant gaming operation; and

(d) The [Cherokee Tribal Gaming] Commission.

THE CHEROKEE CODE § 16-12.08 (1996).

When a person brings a dispute for resolution pursuant to section 16-12.08, the complainant has the right to explain his or her side of the dispute, and to present witnesses in connection with any factual allegations. At each level, if the dispute remains unresolved, the complainant shall be informed of the right to take the dispute to the next higher level as set forth in section 16-12.08. . . .

THE CHEROKEE CODE § 16-12.09 (1996). "All disputes which are submitted to the gaming Commission shall be decided by the Commission based on information provided by the complainant, including any witnesses for, or documents provided by or for, the complainant. . . ." THE CHEROKEE CODE § 16-12.10 (1996).

It is clear that the Eastern Band of Cherokee Indians has policies and procedures in place to resolve disputes such as the one plaintiff presents in the case *sub judice*. Thus, for our courts to exercise jurisdiction in this case would plainly interfere with the powers of self-government conferred upon the Eastern Band of Cherokee Indians and exercised through the Cherokee Tribal Gaming Commission. *Swayney*, 319 N.C. at 62, 352 S.E.2d at 419 (quoting *Fisher v. District Court*, 424 U.S. 382, 387-88, 47 L. Ed. 2d 106, 112 (1976). It would subject a dispute arising on the reservation between the casino and its patron to a forum other than the one the Indians have established for themselves. *Id.*

Whereas the Eastern Band of Cherokee Indians has a greater interest in resolving patron disputes related to activities within the casino, and has policies and procedures for resolving such disputes, the interests of the Indians outweigh the interests of the state. Therefore, the exercise of state court jurisdiction in the present case would unduly infringe on the self-governance of the Eastern Band of Cherokee Indians. For these reasons, we hold that our state courts must yield subject matter jurisdiction to the Eastern Band of Cherokee Indians in the case *sub judice* and affirm the decision of the trial court.

[2] Plaintiff next argues that the trial court erred by concluding that "the Compact between the Eastern Band of Cherokee Indians and the State of North Carolina does not . . . grant civil jurisdiction to the State of North Carolina with respect to gaming activities on the Cherokee Indian Reservation." We disagree.

"If a party presents to the trial court a question concerning . . . errors in conclusions of law, *de novo* is the appropriate standard of review." *N.C. Dep't of Corr. v. McKimmey*, 149 N.C. App. 605, 608, 561 S.E.2d 340, 342 (2002) (citing *Associated Mechanical Contractors, Inc. v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997)). Section 8 of the Tribal-State Compact between the Eastern Band of Cherokee Indians and the State of North Carolina addresses the application of state laws. Plaintiff specifically cites to the following sections of the Tribal-State Compact as granting state court jurisdiction in this case:

(A) State civil and criminal laws shall be applicable to and enforceable by the State against any person for activities relating to Class III gaming which occur outside of Eastern Cherokee Lands.

(B) State criminal laws and regulatory requirements shall be applicable to and enforceable by; the State against any person who is not a member of the Tribe for activities relating to Class III gaming which occur on tribal lands.

. . . .

(D) The State shall have concurrent jurisdiction to commence prosecutions for violation of any applicable state civil or criminal law or regulatory requirement as set forth in the Sections 8(A) and 8(B) of this Compact.

Tribal-State Compact Between the Eastern Band of Cherokee Indians and the State of North Carolina, Sept. 22, 1994.

In the present case, the incident that plaintiff complains of took place in a casino located on the Indian reservation. Thus, Section 8(A), which governs gaming activities that "occur outside of Eastern Cherokee Lands," does not apply to this action. Section 8(B) allows our courts to apply and enforce criminal and regulatory laws violated by non-Indians on tribal property, but does not grant jurisdiction over civil actions alleging unfair and deceptive trade practices. Section

HATCHER v. HARRAH'S N.C. CASINO CO., LLC

[169 N.C. App. 151 (2005)]

8(D) gives the *state* the power to prosecute matters involving civil, criminal and regulatory violations, but does not grant jurisdiction for a *private* cause of action. *See Lea v. Grier,* 156 N.C. App. 503, 508, 577 S.E.2d 411, 415 (2003) *and Lane v. City of Kinston,* 142 N.C. App. 622, 628, 544 S.E.2d 810, 815 (2001) (citations omitted) (Holding that "a statute allows for a private cause of action only where the legislature has expressly provided a private cause of action within the statute."). We agree with the trial court that the Tribal-State Compact does not grant state courts jurisdiction over this matter, and accordingly, we affirm the trial court's conclusion of law.

**[3]** Plaintiff's final argument is that the trial court erred by concluding that "by virtue of Section 16-12.12 of the Cherokee Gaming Ordinance, the Plaintiff consented to the jurisdiction of the Tribe" for disputes related to gaming activities conducted on the reservation. We dismiss this assignment of error.

The Rules of Appellate Procedure require that for each issue that appellant addresses in his brief, "[t]he body of the argument shall contain citations of the authorities upon which the appellant relies." N.C.R. App. P. 28(b)(6) (2004). This rule is mandatory, and failure to follow the rule subjects the appeal to dismissal. *Steingress v. Steingress,* 350 N.C. 64, 65, 511 S.E.2d 298, 299 (1999) (citations omitted).

In the present case, plaintiff fails to cite any legal authority in support of his position. Accordingly, we conclude that this issue does not warrant appellate review, and we dismiss this assignment of error.

Having considered all of plaintiff's assignments of error properly brought forward, we conclude that the trial court did not err in granting defendant's motion to dismiss. Accordingly, we affirm the order of the trial court.

AFFIRMED.

Judges BRYANT and LEVINSON concur.