STATE OF NORTH CAROLINA, EX REL. ROY COOPER, ATTORNEY GENERAL OF NORTH CAROLINA, PLAINTIFF v. SENECA-CAYUGA TOBACCO COMPANY AN UNINCORPORATED ARM OF THE SENECA-CAYUGA TRIBE OF OKLAHOMA, AND SENECA-CAYUGA TRIBAL TOBACCO CORPORATION, A SUCCESSOR IN INTEREST TO THE SENECA-CAYUGA TOBACCO COMPANY, DEFENDANTS

No. COA08-812

(Filed 19 May 2009)

**1. Immunity— sovereign—tribal—tobacco settlement—waiver**

The trial court properly granted defendants' motion to dismiss pursuant to N.C.G.S. § 1A-1, Rule 12(b)(1) in an action by the State to enforce the escrow provisions of the tobacco settlement against a federally recognized Indian tribe. A limited waiver of sovereign immunity for the tribe's initial participation in the escrow agreement was not a consent to an attempt by the State to impose obligations with respect to funds that were never placed in escrow. A tribal business committee's resolution expressing an intent to comply with the act effectuating the agreement did not constitute an unequivocal express waiver of immunity.

**2. Immunity— sovereign—tribal—tobacco settlement—limited waiver—not applicable**

Although the trial court had appropriately granted relief on other grounds, it was held on appeal as an alternate justification for affirming the result that the trial court correctly granted summary judgment for defendants in an action in which the State sought to enforce the escrow provisions of the tobacco settlement against an Indian tribe. The State did not provide factual justification for the conclusion that defendants waived tribal sovereign immunity for the claims the State sought to assert.

Appeal by the State of North Carolina from order entered 5 May 2008 by Judge Orlando F. Hudson, Jr., in Wake County Superior Court. Heard in the Court of Appeals 9 March 2009.

*Attorney General Roy Cooper, by Special Deputy Attorneys General Richard L. Harrison and Melissa L. Trippe, for the plaintiff-appellant.*

*Troutman Sanders LLP, by Gary S. Parsons and Gavin B. Parsons; pro hac vice William H. Hurd and Ashley L. Taylor, Jr., for the defendants-appellees.*

ERVIN, Judge.

The State of North Carolina (the State) appeals from an order entered 5 May 2008 in Wake County Superior Court granting a motion to dismiss filed by Seneca-Cayuga Tobacco Company and Seneca-Cayuga Tribal Tobacco Corporation, the successor in interest to Seneca-Cayuga Tobacco Company (together, Defendants). We affirm the trial court's order.

In November 1998, North Carolina and forty-five other states signed a Master Settlement Agreement (MSA) with four major tobacco manufacturers for the purpose of settling claims that North Carolina could have otherwise asserted against those manufacturers arising from smoking-related health care costs incurred by the State as a result of the consumption of the major manufacturers' products. The General Assembly enacted a series of statutory provisions entitled the Tobacco Reserve Fund and Escrow Compliance Act (Act) in July, 1999 in order to effectuate the MSA. Pursuant to that legislation, all cigarette manufacturers doing business in North Carolina were made subject to N.C. Gen. Stat. § 66-291, which required them to choose between either (1) participating in the MSA or (2) paying certain specified sums, computed on the basis of the quantities of cigarettes sold by April 15 of each year, into a special fund. *See State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 433, 666 S.E.2d 107, 109 (2008). More specifically, N.C. Gen. Stat. § 66-291 provides that:

> (a) Any tobacco product manufacturer selling cigarettes to consumers within the State (whether directly or through a distributor, retailer, or similar intermediary or intermediaries) after the effective date of this Article shall do one of the following:
>
> (1) Become a participating manufacturer (as that term is defined in section II(jj) of the Master Settlement Agreement) and generally perform its financial obligations under the Master Settlement Agreement; or
>
> (2) Place into a qualified escrow fund by April 15 of the year following the year in question the following amounts (as such amounts are adjusted for inflation): . . . .

N.C. Gen. Stat. § 66-291(a). The funds placed in escrow pursuant to N.C. Gen. Stat. § 66-291(a)(2) are intended to provide a source from which any judgment for reimbursement of medical costs obtained by

the State against a nonparticipating manufacturer resulting from the consumption of cigarettes produced by that nonparticipating manufacturer can be satisfied.

According to N.C. Gen. Stat. § 66-291(c), "[e]ach tobacco product manufacturer that elects to place funds into escrow pursuant to this section shall annually certify to the Attorney General that it is in compliance with this section. The Attorney General may bring a civil action on behalf of the State against any tobacco product manufacturer that fails to place into escrow the funds required under this section." N.C. Gen. Stat. § 66-291(c) further states that:

Any tobacco product manufacturer that fails in any year to place into escrow the funds required under this section shall:

(1) Be required within 15 days to place such funds into escrow as shall bring it into compliance with this section. The court, upon a finding of a violation either of subdivision (2) of subsection (a) of this section, of subsection (b) of this section, or of this section, may impose a civil penalty (the clear proceeds of which shall be paid to the Civil Penalty and Forfeiture Fund in accordance with G.S. 115C-457.2) in an amount not to exceed five percent (5%) of the amount improperly withheld from escrow per day of the violation and in a total amount not to exceed one hundred percent (100%) of the original amount improperly withheld from escrow;

(2) In the case of a knowing violation, be required within 15 days to place such funds into escrow as shall bring it into compliance with this section. The court, upon a finding of a knowing violation either of subdivision (2) of subsection (a) of this section, of subsection (b) of this section, or of this section, may impose a civil penalty (the clear proceeds of which shall be paid to the Civil Penalty and Forfeiture Fund in accordance with G.S. 115C-457.2) in an amount not to exceed fifteen percent (15%) of the amount improperly withheld from escrow per day of the violation and in a total amount not to exceed three hundred percent (300%) of the original amount improperly withheld from escrow; and

(3) In the case of a second knowing violation, be prohibited from selling cigarettes to consumers within the

State (whether directly or through a distributor, retailer, or similar intermediary) for a period not to exceed two years.

*Id.* N.C. Gen. Stat. § 66-294(c) also requires that "nonparticipating manufacturer[s]," such as Defendants, "must submit an application to the Office of the Attorney General by April 30th of each year for inclusion on the compliant nonparticipating manufacturers' list." N.C. Gen. Stat. § 66-294(c) also provides that "[t]he application must include a certification that the nonparticipating manufacturer has fulfilled the duties listed in subsection (b) of this section and a list of the brand families ·of the manufacturer offered for sale in the State during either the current calendar year or the previous calendar year."

Cigarette brands manufactured by Defendants were sold to consumers in North Carolina in 2001 and subsequent years. Defendants' tribal business committee at one point expressed the intent to comply with North Carolina's escrow requirements. As a result, Defendants applied to the State for certification to sell certain brands of cigarettes in North Carolina. More particularly, Defendants submitted a Certification of Compliance (Certification) acknowledging that Defendants manufactured certain specified brands on 30 April 2004, as required by N.C. Gen. Stat. §66-294(c). Defendants also appointed a process service agent in the Certification, and attached a letter from the designated process agent dated 21 April 2004 indicating that Corporation Service Company "hereby accepts the appointment as agent for service of process in the state of North Carolina for the above named nonresident or foreign non-participating tobacco product manufacturer, pursuant to N.C. Gen. Stat. § 66-294(b)(1)." In May 2004, Defendants entered into an Escrow Agreement with Wachovia Bank, N.A. (Wachovia), under which Defendants appointed Wachovia to serve as Escrow Agent of the "Qualified Escrow Fund" that Defendants were required to establish under the Act.

Defendants also complied with the statutory escrow requirements for sales made through the year 2004. For example, in April 2004, Defendants deposited $1,863,015.30 into its escrow account as a result of the sale of 95,562,280 cigarettes in North Carolina in 2003. Similarly, Defendants complied with the State's escrow requirements relating to sales made in North Carolina in 2004. After that date, however, Defendants evidently decided to cease compliance with the requirements of the Act. By 17 April 2006, Defendants owed $725,739.01 to the escrow fund relating to the sale of 34,861,800 cigarettes in North Carolina in 2005. Even so, Defendants sold an

additional 4,244,000 cigarettes in North Carolina in 2006, an action that obligated Defendants to pay an additional $91,000.27 into the escrow fund. Defendants did not, however, deposit the required amounts relating to these 2005 and 2006 cigarette sales in their escrow account.

On 12 October 2007, the State filed a complaint seeking a preliminary and permanent injunction requiring Defendants to pay the amount required by the Act into its "Qualified Escrow Fund;" a preliminary and permanent injunction requiring Defendants to file the certificate of compliance required by law; an order prohibiting Defendants, and their successors and assigns, from selling or delivering tobacco products in North Carolina for a period of two years from the date of the court's order; and the recovery of civil penalties, attorney fees and costs as authorized under the Act. The State also requested in its prayer for relief that the court "find and declare that Defendants are not entitled to sovereign immunity for sales off tribal lands or, in the alternative, that the Court declare that the Defendants have waived any sovereign immunity that might otherwise apply."

On 13 December 2007, Defendants filed a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(1) and 12(b)(6), in which they alleged that the trial court lacked "jurisdiction over the subject matter and on grounds of tribal immunity." Defendants asserted that "Seneca-Cayuga Tobacco Company and Seneca-Cayuga Tribal Tobacco Corporation, as enterprises of a federally-recognized Indian tribe, are immune from suit as a matter of Federal law."

The trial court heard Defendants' motion to dismiss on 6 March 2008, at which time the State made an oral motion to amend its complaint to add an affirmative allegation that Defendants had waived any tribal sovereign immunity defense. The State and Defendants submitted documents for the trial court's consideration at the hearing.[1] On 4 April 2008, the trial court entered an order denying the State's motion to amend its complaint and allowing Defendant's dismissal motion. The trial court's order had the effect of terminating the State's claims against Defendants, rendering that order a final judg-

---

1. According to the trial court's order, it considered "Exhibits 1 through 5 submitted by the State of North Carolina and Exhibits A, B and C submitted by the Defendants." Although Exhibits 1 through 5 were attached to the State's complaint and were, for that reason, part of the pleadings, the same cannot be said for Exhibits A, B, and C. As a result, the record clearly establishes that the trial court considered, apparently without objection, materials outside the pleadings in deciding Defendants' dismissal motion.

**STATE EX REL. COOPER v. SENECA-CAYUGA TOBACCO CO.**

[197 N.C. App. 176 (2009)]

ment immediately appealable to this Court pursuant to N.C. Gen. Stat. § 7A-27(c). From this order, the State appeals.

## Motion to Dismiss

In its argument on appeal, the State contends that the trial court erred in granting Defendants' motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(1) and 12(b)(6). After careful consideration of the record and briefs, we conclude that the trial court's decision to dismiss the State's complaint should be affirmed.[2]

## Lack of Subject Matter Jurisdiction

**[1]** Rule 12(b)(1) of the Rules of Civil Procedure allows for the dismissal of a complaint due to a lack of jurisdiction over the subject matter of the claim or claims asserted in that complaint. N.C. Gen. Stat. § 1A-1, Rule 12(b)(1). "[T]he standard of review on a motion to dismiss under Rule 12(b)(1) for lack of jurisdiction is *de novo.*" *Hatcher v. Harrah's N.C. Casino Co., LLC,* 169 N.C. App. 151, 155, 610 S.E.2d 210, 212 (2005). "[M]atters outside the pleadings . . . may be considered and weighed by the court in determining the existence of jurisdiction over the subject matter." *Tart v. Walker,* 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978). This Court has held that sovereign immunity is a defense that is appropriately raised by means of a motion lodged pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1).

Tribal sovereign immunity is a matter of federal law. *Kiowa Tribe v. Manufacturing Techs.,* 523 U.S. 751, 755-60, 118 S. Ct. 1700, 140 L. Ed. 2d 981, 986-88 (1998). An Indian tribe is subject to suit only to the extent that Congress has authorized the assertion of the claim or claims in question against the tribe or the tribe has expressly and unequivocally waived its tribal sovereign immunity. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S. Ct. 1670, 56 L. Ed. 2d 106 (1978); *see also Kiowa Tribe v. Mfg. Techs.,* 523 U.S. 751, 140 L. Ed. 981 (1998). Tribal sovereign immunity extends to commercial activity conducted by an Indian tribe outside its reservation. *Kiowa Tribe,* 523 U.S. 751, 118 S. Ct. 1700, 140 L. Ed. 2d 981. Furthermore, "[i]t is

2. As is discussed in more detail in Footnote No. 1 above, the record reflects that the trial court considered matters outside the pleadings in determining the issues raised by Defendants' dismissal motion. The record does not contain any indication that the State objected to the trial court's consideration of these materials or sought to have the 6 March 2008 hearing delayed in order to permit discovery to be taken concerning any issue, including the extent, if any, to which the trial court had jurisdiction over the subject matter of this case. As a result, we see no obstacle to the evaluation of the trial court's decision with respect to Defendants' dismissal motion on the merits on the basis of the existing record.

settled that a waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.' " *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58-59, 98 S. Ct. 1670, 1677, 56 L. Ed. 2d 106, 115 (1978) (quoting *United States v. Testan*, 424 U.S. 392, 399, 96 S. Ct. 948, 954, 47 L. Ed. 2d 114, 12 (1976) (internal quotation omitted)). The State does not dispute Defendants' claim that, as a general proposition, they are entitled to rely on a defense of tribal sovereign immunity in resisting the State's claims. As a result, unless the State provided some basis for the trial court to conclude that Defendants had "unequivocally expressed" their decision to waive tribal sovereign immunity with respect to the claims asserted in the State's complaint, the State's complaint would have been properly dismissed for lack of subject matter jurisdiction.

At the hearing on Defendants' motion to dismiss, the State and Defendants submitted documents relating to the continued existence of Defendants' tribal sovereign immunity and whether Defendants had waived that defense, including, but not limited to, the Constitution of the Tribe, the Business Committee's 3 December 2003 resolution, and the Escrow Agreement submitted in accordance with N.C. Gen. Stat. § 66-294(a)(5). The Constitution of the Tribe vests in the Business Committee the power "to speak or act on behalf of the Tribe in all matters on which the Tribe is empowered to act." On 3 December 2003, the Business Committee announced that "no waiver, either express or implied, of the right to assert sovereign immunity as a defense . . . shall be valid without the consent of the Business Committee expressed by resolution." Furthermore, the Escrow Agreement, which was, as evidenced by the Certification of Compliance, approved by the Attorney General, stated that "the Tribe grants a *limited* waiver of its sovereign immunity, but *solely* with respect to amounts that are held in or previously have been held in the applicable Beneficiary State's sub-account." This limited waiver of sovereign immunity does not amount to a consent to the maintenance of the present litigation, which represents an attempt by the State to impose obligations on Defendants with respect to funds that never have been placed in escrow. Although the State has pointed to the Business Committee's resolution expressing an intent to comply with the Act, to provisions in the Certification application that refer to the defense of claims "that may arise related to the Brand(s)" and Defendants' assumption "of responsibility for all representations and Brands listed in this Application/Certification," and to provisions in the Escrow Agreement expressing Defendants' plans to file appropriate Certifications and to take other steps to comply with the Act,

none of these statements constitute an unequivocal express waiver of Defendants' right to immunity from an effort by the State to collect unpaid amounts that should have been placed in escrow, penalties, or other relief that might be available under the Act. As a result, the trial court properly granted Defendants' dismissal motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1).

### Failure to State a Claim for Which Relief Can be Granted

[2] We now determine whether the trial court erred by granting Defendants' dismissal motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6).[3] Preliminarily, we observe that, since the trial court considered matters outside the pleadings in granting Defendants' Rule 12(b)(6) motion, Defendants' motion was converted to one for summary judgment. *See Alamance County Hospital v. Neighbors*, 315 N.C. 362, 364-65, 338 S.E.2d 87, 88 (1986). A party seeking summary judgment must establish the absence of any triable issue by showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379 (1975). "An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972). All inferences are to be drawn against the moving party and in favor of the opposing party. *Deese*, 288 N.C. 375, 218 S.E.2d 379.

As a result of the fact that Defendants' status as tribal entities is unquestioned and the fact that Defendants tendered a document indicating a limited waiver of tribal sovereign immunity that did not extend to the claims asserted by the State, the State bore the burden of showing the existence of a genuine issue of material fact relating to the validity of the State's claim that Defendants waived tribal sovereign immunity. *See Gaunt v. Pittaway*, 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664, *appeal dismissed and disc. review denied*, 353 N.C. 262, 546 S.E.2d 401 (2000), *cert. denied*, 353 N.C. 371, 547 S.E.2d 810, *cert. denied*, 534 U.S. 950, 151 L. Ed. 2d 261 (2001) (stating that,

---

3. The Court's conclusion that the trial court appropriately granted relief under N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) should, in the ordinary course of events, suffice to render the trial court's decision with respect to Defendants' motion under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) moot. As a result, we address the issues raised by the trial court's decision to allow Defendants' dismissal motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) as an alternative justification for affirming the result reached by the trial court.

STATE ex rel. COOPER v. SENECA-CAYUGA TOBACCO CO.

[197 N.C. App. 176 (2009)]

"[o]nce the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial"); *see also Beck v. City of Durham*, 154 N.C. App. 221, 229, 573 S.E.2d 183, 189-90 (2002) (stating that when the defendants, in moving for dismissal of the case, presented to the court an affidavit stating that the City did not waive its immunity, the burden once again shifted to the plaintiff, as the non-moving party, to introduce evidence in opposition to the motion that set forth specific facts showing that there was a genuine issue for trial, and that the plaintiff failed to come forward with a forecast of his own evidence of specific facts demonstrating that immunity was waived). However, the State failed to provide any factual information tending to show that Defendants waived tribal sovereign immunity with respect to the types of claims asserted in the State's complaint; rather, the State simply asserted that the court should "find and declare that Defendants are not entitled to sovereign immunity for sales off tribal lands or, in the alternative, that the Court [should] declare that the Defendants have waived any sovereign immunity that might otherwise apply." After a careful review of the material in the record and for the reasons given in response to the State's challenge to the trial court's ruling with respect to the subject matter jurisdiction issue, we conclude that the State failed to provide the trial court with a factual justification necessary to support a conclusion that Defendants waived tribal sovereign immunity with respect to the claims that the State seeks to assert against Defendants. As a result, the record does not suggest the existence of a genuine issue of material fact with respect to whether Defendants waived tribal sovereign immunity, and we conclude that Defendants were entitled to judgment as a matter of law with respect to this issue. Thus, the trial court did not err by granting summary judgment in Defendants' favor with respect to the tribal sovereign immunity issue.[4]

## Conclusion

As a result, we conclude that the trial court did not err by granting Defendants' dismissal motion pursuant to N.C. Gen. Stat. § 1A-1,

---

4. As we noted in Footnote No. 1 above, the record does not reflect that the State objected to the trial court's decision to consider the additional documents tendered by Defendants or sought a continuance in order to conduct discovery concerning the sovereign immunity issue. Thus, we see no procedural obstacle arising from the proceedings in the trial court that would prevent us from appropriately considering this issue on the merits.

Rule 12(b)(1) or granting summary judgment against the State and in favor of Defendants on the tribal sovereign immunity issue.[5] As a result, we affirm the order of the trial court.

Affirmed.

Chief Judge MARTIN and Judge WYNN concur.

---

5. The State also contended before this Court that the trial court erred by denying an oral motion for leave to amend its complaint to allege a waiver of tribal sovereign immunity. As is set forth in more detail above, we have affirmed the trial court's decision to dismiss the State's complaint based upon the absence of any evidence tending to show that Defendants waived tribal sovereign immunity with respect to the claims asserted in the State's complaint in the materials submitted to the trial court. Our decision to affirm the trial court's order does not, in any way, rest upon the absence of allegations asserting that Defendants waived tribal sovereign immunity from the State's complaint. As a result, we do not need to address the trial court's denial of the State's amendment motion in order to adequately resolve the issues raised by the State's appeal.