*205 ORDER AND OPINION DENYING DEFENDANT’S MOTION TO DISMISS
This matter coming on to be heard at the May 15, 2014 session of civil court on Defendant’s Motion to Dismiss; the Court after hearing arguments of counsel in open court as well as reviewing the pleadings, the evidence offered at the hearing, the file and the memorandums of law presented by Plaintiff and Defendant took this matter under advisement and makes the following findings of fact and conclusions of law:

Findings of Fact

1) Plaintiff is a Limited Liability Corporation whose sole member is Jeremy Boone and Defendant is a North Carolina Limited Liability Corporation whose sole member is the Eastern Band of Cherokee Indians (EBCI). Both LLCs are organized under the laws of North Carolina.
2) Defendant is managed pursuant to an operating agreement by a five person board of directors nominated by the Principal Chief of the EBCI and approved by its Tribal Council. While it appears the practice has been to appoint enrolled members as directors, there is no requirement in the operating agreement that the board of directors be enrolled members of the EBCI. Additionally, the operating agreement restricts the manager from confessing a judgment or incurring any debt other than the original debt for construction approved by Tribal Council in Resolution 418.
3) Defendant’s stated purpose under section 2.6 of its operating agreement is to “acquire, own, manage, operate and to do all activities necessary or incidental to the operation of a golf course, and consistent therewith to engage in any activities as are incident thereto.”
4) That the EBCI is a federally recognized Tribe under the laws of the Federal Government and within the boundaries of the United States.
5) Plaintiff and Defendant entered into an independent contractor agreement on December 16, 2009 wherein Plaintiff was to perform services as a golf course superintendent. Defendant terminated the contract on September 7, 2013 and as a result, Plaintiff is seeking recovery of a liquidated damages clause under paragraph 6 D of the agreement. Defendant has denied that Plaintiff is entitled to such claim and has made a motion to dismiss claiming the defense of sovereign immunity.
6) Pursuant to paragraph 9 of the agreement, the Plaintiff and Defendant consented to the Cherokee Court having jurisdiction, and further agreed that the Cherokee Code, Federal law, and North Carolina law would be applied in the enforcement of this contract.
7) Resolution 418 passed by the Tribal Council of the EBCI authorized the formation of defendant Sequoyah National as an LLC, and guaranteed the *206 financing to complete the construction of a golf course. The resolution also authorized the EBCI Tribal Business Committee to execute all documents for the construction loans as well as approve the transfer of the golf course property to the LLC. The Tribal Council also approved a limited waiver of sovereign immunity for the bridge loan, and permanent loan. Nothing in the resolution allowed the defendant LLC the right to exert the defense of sovereign immunity.
8) Resolution 418 approved by Tribal Council did not contain any purposes or objectives other than the construction of a golf course and did not adopt the objectives that are set forth in defendant’s Exhibit “D” entitled Request for Proposals.
9) The EBCI has previously set up other entities, enterprises and programs in the Cherokee Code such as Cherokee Broadband Enterprise, Chapter 3; Tribal Gaming Commission, Chapter 16; Tribal Casino Gaming Enterprise, Chapter 16A; and Tribal Health Enterprise, Chapter 130A. All of these entities are granted authority to enter into contracts and execute limited waivers of sovereign immunity in their business dealings. The Defendant was not set up as an enterprise or incorporated under the Cherokee Code and was not given the same authority as the other Tribal entities or enterprises herein-above referred to.
10) That Defendant at the hearing of this matter introduced two affidavits by Robert Mark Saunooke who is one of the managers of Defendant dated April 14, 2014 and May 14, 2014. In the April 14 affidavit Mr. Saunooke stated that, “To date, the Tribe has contributed over 4 million dollars to support the ongoing operations of the golf course.” In the May 14, 2014 affidavit, Mr. Saunooke indicated that one of the purposes in forming the LLC was for federal tax purposes. Defendant never offered any evidence that the formation of the LLC under North Carolina law was involuntary.
11) The Cherokee Code, Chapter 7 of the Judicial Code, Section 7-13 entitled “Sovereign Immunity” requires the Judicial Branch to dismiss any claim or cause of action against the EBCI, or any of its programs, enterprises, authorities, officials, agents, or employees acting in their official capacities, unless the complaining party demonstrates that the Cherokee Tribal Council or the United States Congress has expressly and unequivocally waived the Eastern Band’s sovereign immunity for such claim in a written ordinance, law, or contract.
12) Plaintiff in paragraph 4 of its complaint alleged that Defendant reports to the Council members of the EBCI. Defendant in its answer denied that allegation.
13) That the Cherokee Code, Chapter 7 of the Judicial Code, Section 7-14 provides that proceedings in the Cherokee Court are to be governed by the North Carolina Rules of Civil Procedure.
14) Pertinent provisions of the North Carolina Limited Liability Company Act are set forth below as follows:
Section 57D-1-03 Definitions (12) Entity—A corporation, limited liability company, partnership (including a limited partnership), unincorporated association, trust, estate, government or governmental agency, instrumentality, or other entity.
Section 57D-1-03 Definitions (19) LLC—An entity formed under this Chapter (or former Chapter 57C of the General Statutes) that has not become another entity or form of entity *207 by merger, conversion, or other means.
Section 57D-2-01 Nature, Purposes, Duration, Existence (a) An LLC is an entity distinct from its interest owners.
Section 57D-2-03 Powers of the LLC Unless this Chapter provides otherwise or the powers of the LLC are limited under the operating agreement, an LLC has the same powers as an individual or a domestic corporation to do all things necessary or convenient to carry out its business.
Section 57D-3-30. Liability of members, managers, and other company officials to third parties. A person who is an interest owner, manager, or other company official is not liable for the obligations of the LLC solely by reason of being an interest owner, manager or other company official.
Section 57D-2-03 authorizes an LLC to do all things that a domestic corporation can do under Chapter 55 which includes the power to sue and be sued or complain and defend in its corporate name.

Discussion

I. STANDARD OF REVIEW FOR MOTION TO DISMISS
First, the Court must discuss the standard of review as concerns the question of whether the defense or claim of sovereign immunity arises under N.C. Rules of Civil Procedure 12(b)(1) which is subject matter jurisdiction or 12(b)(2) which is personal jurisdiction. Defendant did not specify in its motion under which section it was moving to dismiss. North Carolina Courts seem to be split on this issue. In the cases of Welch Contracting, Inc. v. North Carolina Dep’t of Trans., 175 N.C.App. 45, 622 S.E.2d 691 (2005) and N.C. ex. rel. Cooper v. Senecar-Cayuga Tobacco Co., 197 N.C.App. 176, 676 S.E.2d 579 (2009), the Court held that the question of sovereign immunity is a question of subject matter jurisdiction under Rule 12(b)(1). The following eases are in accord: FDIC v. Meyer, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); Leivis v. Norton, 424 F.3d 959 (9th Cir.2005) and E.F.W. v. St. Stephen’s Indian High School, 264 F.3d 1297 (10th Cir.2001). However, see Green v. Kearney, 203 N.C.App. 260, 690 S.E.2d 755 (2010) holding that it is a question of personal jurisdiction. This Court is aware of its prior ruling in Jacobson v. EBCI, — Am. Tribal Law-,-, 4 Cher. Rep. 31, 2005 WL 6438040, *1 (Eastern Cherokee Ct.) 2005. However, that decision contained no analysis of existing law or of the concepts of personal versus subject matter jurisdiction but instead simply concludes that sovereign immunity is a question of personal jurisdiction. This Court in Steve Teesate-skie, Jr. v. Eastern Band of Cherokee Indians Minors Fund et al. 12-CV-059[1] set forth an analysis in determining that the defense of sovereign immunity is a 12(b)(1) defense which is subject matter jurisdiction. Therefore, Defendant’s motion to Dismiss will be treated as a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.
II. STANDARD OF REVIEW AS TO DEFENDANTS MOTION TO DISMISS BASED ON THE DEFENSE OF SOVEREIGN IMMUNITY
(A) Subordinate Economic Test
This is a case of first impression in the Cherokee Court. Under the Chero *208 kee Code, Chapter 7 Section 7.2 the Court must first look to any Cherokee applicable law and then Federal law and North Carolina law. The U.S. Supreme Court in Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998), held that “Indian tribes enjoy sovereign immunity from civil suits on contracts, whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation. As a matter of federal law, a tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity.” The Ninth Circuit Court of Appeals addressed this issue in two cases. The Court extended sovereign immunity in Allen v. Gold Countip Casino, 464 F.3d 1044 (9th Cir.2006) when it determined that where a casino is created pursuant to a tribal ordinance with the purpose to enhance economic development, “the Casino functions as an arm of the Tribe. It accordingly enjoys the Tribe’s immunity from suit.” Id. at 1047. The Court again in Cook v. AVI Casino Enterprises, Inc., 548 F.3d 718, 726 (9th Cir.2008), held that “Allen controls this case and we hold that as a tribal corporation and an arm of the Fort Mojave Tribe, ACE enjoys sovereign immunity from Cook’s suit.”
It is therefore clear that if it is determined that the defendant is an arm of the tribe, it would be entitled to sovereign immunity as a defense. In Breakthrough Mgmt. Grp., Inc. v. Chukchansi Econ. Dev. Auth., 629 F.3d 1173 (10th Cir.2010), the Court developed a six factor subordinate economic test to determine whether entities are entitled to share in the Tribe’s sovereign immunity. The six factors are as follows: (1) the method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the Tribe has over the entities; (4) whether the Tribe intended for them to have tribal sovereign immunity; (5) the financial relationship between the Tribe and the entity; and (6) whether the purposes of tribal sovereign immunity are served by granting them immunity. Id. at 1191. In concluding that the Casino in this case had immunity, the Court in considering the six factors found that, it was stipulated by the parties that the Casino was created under tribal law; the Casino was created for the financial benefit of the tribe; that twelve of the directors were non-Indians which weighed both for and against immunity; that the Tribe clearly intended for the Casino to have immunity because the Casino was allowed to waive sovereign immunity and to consent to a judgment against any property or income of the entity; that the Tribe was dependent on the revenues of the Casino for its economic development; and lastly that the Tribe and the Casino are so closely related in their activities to promote and fund the Tribe’s self-determination that sovereign immunity and its purposes are served by granting sovereign immunity. Id. at 1191— 1195. The defendant, Sequoyah, in its brief and argument relied heavily on J.L. Ward Associates, Inc. v. Great Plains Tribal Chairmen’s Health Board, 842 F.Supp.2d 1163 (2012). The District Court of the Southern Division of South Dakota followed Breakthrough in concluding that the Health Board in Great Plains even though incorporated as a non-profit corporation under South Dakota law, was immune from suit. The facts in that case differ from those in the present case. In J.L. Ward, sixteen federally recognized tribes from four states formed the corporation to provide the Indian people with a single entity to deal with the Indian Health Service. Id. at 1164. The Articles of Incorporation for Great Plains contained the following objectives: Id. at 1165.
1) To improve the effectiveness of the Indian health program through respon *209 sible participation of the Indian people in making decisions about their health services, in order to improve their health status.
2) To assist the HIS in establishing program priorities and in distributing existing resources.
3) To advise and assist the Director, [Great Plains Area] Indian Health Service, in developing long-range program plans.
4) To represent the Indian interests and desires at all levels for health related programs.
5) To assist in development of Indian responsibility for community activities affecting health.
6) To assist member tribes in the development of health programs that will be beneficial to the Tribes.
7) To establish participation in any meetings that will provide clear and concise information to the Tribes.
8) To represent the organization and member tribes in the Congress of the United States at any hearings and at National Organization meetings regarding health issues and care.
No such objectives for Tribal benefit are stated in defendant Sequoyah’s Articles of Incorporation in the present case. The Court in J.L. Ward adopted the six factor test as set forth above but also found that the fact that Great Plains was incorporated under state law instead of tribal law and that a suit against the corporation would not directly affect the tribes’ fiscal resources “militate against sovereign immunity.” Id. at 1176. “Essentially, tribal sovereign immunity protects tribal governmental corporations owned and controlled by a tribe and created under its own tribal laws.” Wright v. Colville Tribal Enter. Corp., 159 Wash.2d 108, 147 P.3d 1275 (2006). In Cook supra, sovereign immunity was extended to a tribal casino incorporated under tribal law. It is clear that the method of creation of an entity is an important factor in the six factor test.
The Tenth Circuit Court of Appeals distinguished its six factor test applied in Breakthrough where the casino was created under tribal law, in the case of Somerlott v. Cherokee Nation Distribs. Inc., 686 F.3d 1144 (10th Cir.2012). The defendant in Somerlott was incorporated under the laws of Oklahoma as a limited liability corporation which provided that the company could sue and be sued in all courts and that a company formed under the act was a separate legal entity. This language is virtually identical to the North Carolina Limited Liability Company Act under which Defendant Sequoyah is incorporated. The Court in Somerlott stated, “Thus, the subordinate economic entity test is inapplicable to entities which are legally distinct from their members and which voluntarily subject themselves to the authority of another sovereign which allows them to be sued.” Id. at 1149-1150. “Accordingly, CND, a separate legal entity organized under the laws of another sovereign, Oklahoma, cannot share in the Nation’s immunity from suit, and it is not necessary to apply the six-factor BMC test.” Id. at 1150. See also, Uniband, Inc. v. Comm’r of Internal Revenue, 140 T.C. 230 (2013) and Eaglesun Systems Products, Inc. v. Ass’n of Village Council Presidents, 2014 WL 1119726, United States District Court, N.D. Oklahoma (March 20, 2014). In light of the Somerlott decision, it would seem that this Court should simply rule that since Defendant is incorporated under North Carolina law as a limited liability corporation they are not an arm of the Tribe and EBCI’s sovereign immunity cannot be extended to it. However, the case of Haile v. Saunooke, 246 F.2d 293 (4th Cir.1957), a case from the Fourth Circuit Court of Appeals, is controlling. Haile *210 involved a personal injury claim for damages against Osley Bird Saunooke, along with his wife, and the EBCI over the collapse of a swinging bridge. The Eastern Band was incorporated under the laws of North Carolina which led to the argument that the EBCI could be sued because of that incorporation. The Court held that, “The arguments offered in support of the right to sue this band of Indians, either directly or through the United States as trustee and guardian, merit but brief answer. It is said that the right to sue the band is given by the act of the Legislature of North Carolina incorporating the band; but it is perfectly clear that an act of a state legislature cannot be allowed to interfere with the guardianship over these people which the United States has assumed, since Congress alone must determine the extent to which the immunities and protection afforded by tribal status are to be withdrawn.” Id. at 297. This case was not cited by the Plaintiff or Defendant in their briefs, but is still valid law and controlling in this instance. Therefore, unlike the ruling in Somerlott, by the Tenth Circuit, our Fourth Circuit has ruled that incorporation under the laws of North Carolina alone, does not divest the entity from sovereign immunity. As such, the Court must apply the six factor test in the present case as the standard of review to determine if the defendant is an arm of the Tribe and entitled to assert the defense of sovereign immunity.
(B) Application Of The Six Factor Test To The Present Case
(1) The first factor, the method of creation, weighs against the Defendant. The Defendant was not created as an enterprise, entity, or incorporated under the Cherokee Code, but was created as a limited liability corporation under the North Carolina Limited Liability Company Act. Defendant can sue or be sued in its own name and the members are not personally liable for its actions. Also, pursuant to N.C. General Statutes Chapter 57D-2-01, an LLC is an entity distinct from its interest owners. Defendant has but a single member, that being the Eastern Band, so if an LLC has a distinct identity from its owner, how can it be an arm of the Tribe? Additionally, under N.C. General Statutes, Chapter 57D-1-03 (12) and (19) once an LLC is created it cannot become another entity such as a government or governmental agency.
(2) The second factor, the purpose of the entity, also weighs against the Defendant. Here, the only purpose stated in the Defendant’s operating agreement is to “acquire, own, manage, operate and to do all activities necessary or incidental to the operation of a golf course, and consistent therewith to engage in any activities as are incident thereto”. Likewise, Resolution 418 approved by Tribal Council did not contain any purposes or objectives other than the construction of a golf course and did not adopt the objectives that are set forth in Defendant’s Exhibit “D” entitled Request for Proposals. Clearly, the main purpose was to operate a golf course for profit. Defendant contended that incorporation was for tax purposes but there is no evidence that the incorporation was involuntary or that this reason alone as a stated purpose in any way affects the Tribe since the LLC has a separate identity from the Tribe.
(3) The third factor, the structure, ownership, and management, including the amount of control the Tribe has over the entities, weighs both for and against the defendant. As was set forth above in the first factor, Defendant was set up as a North Carolina LLC with a separate identity than that of the Tribe. In addition, Defendant is managed pursuant to an op *211 erating agreement by a five person board of directors nominated by the Principal Chief of the EBCI and approved by its Tribal Council. There is no requirement in the operating agreement that the board of directors be enrolled members of the EBCI. While it has clearly been the practice that the board of directors consist of enrolled members, the Chief and Tribal Council could approve non-enrolled members as future directors. In addition, Plaintiff in paragraph 4 of its complaint, alleged that defendant reports to the Council members of the EBCI which allegation the Defendant denied. As such, how much control Tribal Council can exert over the board of directors is questionable.
(4) The fourth factor, the tribe’s intent with respect to the sharing of its sovereign immunity, weighs against the defendant. Resolution 418 passed by the Tribal Council of the Eastern Band of Cherokee Indians, authorized the formation of Defendant as an LLC, and guaranteed the financing to complete the construction of a golf course. The Tribal Council also approved a limited waiver of sovereign immunity for the bridge loan and permanent loan, but nothing in the resolution allowed the Defendant LLC the right to exert the defense of sovereign immunity. The right to execute a limited waiver was not granted to the defendant as has been done for other enterprises or entities in the Cherokee Code, so it is clear there was no express intent to extend sovereign immunity to the defendant.
(5) Factor five, the financial relationship between the Tribe and the entity, again is weighted both for and against the defendant. While the EBCI has financed the construction of the golf course and guaranteed a permanent loan in the amount of nine and one-half million dollars in the name of the LLC and a bridge loan in the name of the LLC in the amount of three million dollars, the Tribal Council also authorized the transfer of the land of the golf course property to the LLC in Resolution 418. The Tribe has also contributed some four million dollars to support the ongoing operations of the golf course. Nevertheless, the EBCI is not dependent on the operation of the golf course to fund its programs or support economic development and an adverse judgment against the Defendant would be only against the assets of the Defendant, and not against the assets of the Tribe. Additionally, the operating agreement restricts the manager from confessing a judgment or incurring any debt other than the original debt for construction approved by Tribal Council in Resolution 418. It appears from the evidence that the intent of creating the LLC was to make sure that the Tribe’s assets and general treasury would not be at risk.
(6) Finally, the sixth factor, whether the purposes of tribal sovereign immunity are served by granting the entity immunity, there is no evidence to suggest that immunity should be extended. Defendant LLC was created as a for profit business as a golf course with no other governmental or economic purpose stated. The golf course is open to the public and is located off trust lands. As was stated above, since the land was conveyed to the LLC, the Tribe’s assets are insulated and the Tribe itself did not see fit to set this entity up as a Tribal enterprise or program as has been done with other governmental enterprises. If the EBCI had wanted to extend sovereign immunity to the defendant it could have easily done so by setting it up as an enterprise under the Cherokee Code which it specifically chose not to do. Clearly from all of the evidence, the intent was to set up an independent business entity separate and apart from the Tribe.
*212 Accordingly, after considering all of the factors set forth above, the Court concludes that the defendant is not an arm of the Tribe of the Eastern Band of Cherokee Indians and is not entitled to share in the Tribe’s sovereign immunity.
BASED ON THE FOREGOING FINDINGS OF FACT, THE COURT MAKES THE FOLLOWING CONCLUSIONS OF LAW:
1) That this Court has both subject matter and personal jurisdiction.
2) That the issue of sovereign immunity is a question of subject matter jurisdiction properly addressed under N.C. Rules of Civil Procedure Rule 12(b)(1).
3) That the defendant Sequoyah National Golf Club, LLC is not a tribal entity or an arm of the Tribe of the Eastern Band of Cherokee Indians requiring dismissal pursuant to the Cherokee Code, Chapter 7 of the Judicial Code, Section 7-13.
4) That the above defendant is not entitled to assert sovereign immunity as a defense.
THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED AS FOLLOWS:
1) That defendant’s motion to dismiss pursuant to Rule 12(b)(1) is hereby denied.
/s/ DANNY E. DAVIS DANNY E. DAVIS ASSOCIATE JUDGE THE CHEROKEE COURT

. The Order and Opinion in that case includes the full analysis and it would serve no purpose to restate the analysis in this opinion. That order is presently on appeal to the Cherokee Supreme Court but the opinion in its entirety may be found in the Cherokee Court Clerk of Court's office.