OPINION
PER CURIAM.
Steve Testateskie, Jr., and the other members of the plaintiff class (collectively “plaintiff’), appeal from the trial court’s order dismissing their claims against the Eastern Band of Cherokee Indians, the individual trustees, and Chief Michell Hicks (collectively “defendants”). Defendants filed a motion to dismiss plaintiffs claims. The trial court granted defendants’ motion to dismiss based on Rule 12(b)(1) of the N.C. Rules of Civil Procedure due to the Eastern Band of Cherokee Indians’ (hereinafter “EBCI”) tribal sovereign immunity and on Rule 12(b)(6) due to the individual defendants’ public officer immunity. After thoughtful review of the issues and relevant materials, we affirm the trial court’s decision to dismiss plaintiffs claims based on Rule 12(b)(1) lack of subject matter jurisdiction because there was no waiver of sovereign immunity and pursuant to Rule 12(b)(6) because the individual defendants, including Chief Michell Hicks, are entitled to public officer immunity as trustees for the EBCI Minors Trust Fund, and as Chief for the EBCI.

Background

Section 16C of the Cherokee Code sets out a gaming revenue allocation plan to distribute monies received from tribal gaming operations. As part of that plan, § 16C-6 established an EBCI Minors Trust Fund and set up a Minors Trust Fund Investment Committee (hereinafter “Investment Committee”) to serve as trustees for that fund. The Minors Trust Fund was created “to promote the general welfare of the EBCI and its members.” Cherokee Code Ch. 16C § 16C-1 (2009). *184 The Code directed that the Minors Trust Fund assets “shall be invested in a reasonable and prudent manner so as to protect the principal and seek a reasonable return.” Cherokee Code Ch. 16C § 16C-6(a)(2) (2010). That section also authorized distributions to the recipients when the individual enrolled members obtained the age of 18 with a high school diploma or GED, or age 21. Thus establishing that these assets be properly handled so that the members of the EBCI receive their rightful distribution.
In September of 2008, the individual trustees who make up the Investment Committee did not transfer funds held in trust for seventeen year old beneficiaries to a pre-payment sub-account. Plaintiff alleges this failure to set aside trust fund monies caused economic harm of approximately $22,000 to each member of the class. Plaintiff argues that the Trustees breached their fiduciary duty when they failed to follow guidelines regarding how Trustees could handle Minors Trust Fund assets. The guidelines as presented by plaintiff in his brief read as follows:
However, as such time a participant reaches the age of 17, the participant’s balance shall be transferred to a separate, designated “pre-pay-out” sub-account (the sub-account), the emphasis of which shall be principal preservation. The purpose of this special account for 17 year olds is to prevent erosion of the participant’s account balance in the period prior to payout from the Minors Fund. The collective assets of said sub-account shall be invested in a combination of short-term, high quality investment instruments including 90-day T-bills, short term high-grade commercial paper, money market funds, and various cash equivalent investments.
Pl.’s Br. Appeal 25-26.
Teesateskie was 17 years old when the Investment Committee decided not to transfer trust funds into a pre-payment sub-account. Teesateskie’s account in the Minors Trust Fund was $90,016.53 on December 31, 2007 and dropped in value to $78,419.37 over the following year. Tee-sateskie received disbursement on June 2, 2011. The net payment after withholding for taxes was $65,186.99. See Cherokee Code Ch. 16C § 16C-6(h) (2010) and § 16C-7 (2009) (calling for a tax amount to be set aside rather than paid to the individual member). Chief Hicks issued an “Update on Minors’ Fund” which called for the Tribe to create a means for it to indemnify the minors who lost principal due to the decrease in the Minors’ Fund value. Teesateskie learned on June 2, 2011 that the Tribe would not indemnify his claimed losses. Defendants had previously purchased insurance through Allied World Assurance Company (hereinafter “Allied”) that may provide coverage on the claims alleged by plaintiff. Plaintiff argues that the defendants’ failure to follow the recommendations under the guidelines resulted in the financial loss and that the Allied policy subjects the EBCI to suit regarding how it handled the Minors Trust Fund assets.
Plaintiff brought suit against defendants on February 21, 2012. Plaintiffs claims against defendants were: (1) violation of Cherokee Code; (2) negligence; (3) breach of fiduciary duty; (4) unjust enrichment; (5) constructive trust; and (6) punitive damages.
The trial court held a hearing on defendants’ motion to dismiss plaintiffs claims on November 21, 2013. It ruled in favor of defendants by dismissing all of plaintiffs claims based on tribal sovereign immunity and public officer immunity. Plaintiff appeals this ruling. The only *185 claims before this Court[1] are plaintiffs claims of violating the Cherokee Code, negligence, and breach of fiduciary duty against the EBCI, against the individual trustees, and against Chief Hicks.[2]

I. Tribal Sovereign Immunity

A. Standard of Review

Reviewing a court order of dismissal based on Rule 12(b)(1) of the Rules of Civil Procedure carries a de novo standard of review. See Hatcher v. Harrah’s N.C. Casino Co., LLC., 169 N.C.App. 151, 155, 610 S.E.2d 210, 212 (2005). This review also allows us to consider matters outside the pleadings and weighed by the lower court when coming to its conclusions in determining whether subject matter jurisdiction is properly asserted or denied. See State ex rel. Cooper v. Seneca-Cayuga Tobacco Co., 197 N.C.App. 176, 181, 676 S.E.2d 579, 583 (2009). A de novo standard of review also means that the appellate court evaluates the materials without needing to pay deference to the lower court’s order.
A motion to dismiss based on tribal sovereign immunity is a question of subject matter jurisdiction. See Senecar-Cayuga, 197 N.C.App. at 182, 676 S.E.2d at 584 (evaluating tribal sovereign immunity under Rule 12(b)(1) as a question of subject matter jurisdiction). The Senecctr-Cayuga court explained that “[t]ribal sovereign immunity is a matter of federal law.” Id. at 181, 676 S.E.2d at 583. “As a matter of federal law, a tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity.” See Kiowa Tribe of Okla. v. Mfg. Techs. Inc., 523 U.S. 751, 754, 118 S.Ct. 1700, 1702, 140 L.Ed.2d 981 (1998). The Seneca-Cayuga court also described the standard for waiver as one where “the tribe has expressly and unequivocally waived its sovereign immunity,” Senecar-Cayuga, 197 N.C.App. at 181, 676 S.E.2d at 583, and “that a waiver of sovereign immunity ‘cannot be implied but must be unequivocally expressed.’ ” Id. at 182, 676 S.E.2d at 584 (quoting Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58-59, 98 S.Ct. 1670, 1676-78, 56 L.Ed.2d 106 (1978)). We find the Senecar-Cayuga court’s method for evaluating tribal sovereign immunity persuasive, and therefore hold that as a threshold matter, a motion to dismiss based on tribal sovereign immunity is a motion to dismiss pursuant to Rule 12(b)(1).

B. Analysis

Plaintiff argues on appeal before this Court that defendants waived their tribal sovereign immunity in one of two ways. First, they argue that § 1—2(g)(3) of the Cherokee Code governs this case and should be interpreted as a waiver of tribal sovereign immunity when the EBCI purchases liability insurance. Second, they argue that defendants waived tribal sovereign immunity by failing to comply *186 with the sovereign immunity endorsement in the Allied insurance agreement. We disagree.
Plaintiff first argues that § 1—2(g)(3) of the Cherokee Code governs this case and should be interpreted as a waiver of tribal sovereign immunity when the EBCI purchases liability insurance. Section 1-2(g)(3) reads as follows:
(g) The Cherokee Court of Indian Offenses or any successor Cherokee Court shall exercise jurisdiction over actions against the Eastern Band of Cherokee Indians seeking the following relief: ... (3) Damages for tort claims where the Tribe maintains insurance coverage for such claims, with recovery not to exceed the amount of liability coverage maintained by the Tribe.
Cherokee Code Ch. 1 § l-2(g)(3) (2003). However, we find that Chapter 16C § 16C-5(Z )(13) and Chapter 7 § 7-13 govern this case and explicitly read these two provisions to prevent § l-2(g)(3) from being interpreted as a waiver of tribal sovereign immunity in an action involving a distribution dispute under Chapter 16C. Chapter 16C, Gaming Revenue Allocation Plan, is the chapter that covers the creation of the Minors Trust Fund. Specifically, § 16C-6(a) is its creation statute. Section 16C-5 covers distributions from the Minors Trust Fund to its beneficiaries and subsection (Z )(13) reads as follows:
Nothing in this Chapter shall be deemed a waiver of the sovereign immunity of the Eastern Band of Cherokee Indians, or its officers, agents, or employees acting in their official capacities. To the extent that any other tribal law may be interpreted as such a waiver of sovereign immunity for any claim or action related to distribution of per capita payments, it is hereby rescinded.
Cherokee Code Ch. 16C § 16C-5(Z)(13) (2013) (emphasis added). Chapter 7 covers the judicial code of the EBCI. Section 7-13 specifically covers tribal sovereign immunity and reads as follows:
Nothing in this chapter shall be construed as a waiver of the sovereign immunity of the Eastern Band of Cherokee Indians. The Judicial Branch shall dismiss any claim or cause of action against the Eastern Band of Cherokee Indians, or any of its programs, enterprises, authorities, officials, agents, or employees acting in their official capacities, unless the complaining party demonstrates that the Cherokee Tribal Council or the United States Congress has expressly and unequivocally waived the Eastern Band’s sovereign immunity for such a claim in a written ordinance, law, or contract.
Cherokee Code Ch. 7 § 7-13 (2000).
Under the rules of statutory interpretation, a court should first look to the plain meaning or the plain language of a statute to determine if the statute speaks directly to the issue presented. See City of Arlington, Tex. v. F.C.C., — U.S.-, 133 S.Ct. 1863, 1868, 185 L.Ed.2d 941 (2013). This case involves a statute that speaks directly to the issue presented; and we, therefore, do not need to evaluate the EBCI’s interpretation of the statute. The issue plaintiff presents is one regarding distribution of per capita payments. Section 16C-5(Z)(13) speaks directly to this issue; and thus, this case is governed by § 16C-5(Z)(13).
Section 16C-5(Z )(13) is explicit and clear. By its terms, it supersedes other Cherokee Code provisions that could be interpreted as a waiver of tribal sovereign immunity when the cause of action is one related to per capita payment distribution under Chapter 16C. The dispute at hand is one “related to distribution of per capita payments.” Plaintiffs argument is that *187 the per capita payments were lower than they otherwise would have been had defendants handled the Minors Trust Fund’s assets according to the guidelines. Since this case is directly covered under § 16C-5(1 )(13), § l-2(g)(3) cannot be interpreted as a waiver of tribal sovereign immunity because any waiver of immunity that could be found therein was “rescinded” under § 16C-5(Z)(13).
Moreover, § 7-13’s plain language leads us to conclude that § 1-2(g)(3) cannot constitute a waiver of tribal sovereign immunity under a Chapter 16C per capita distribution claim. Section 7-13 explains that we “shall dismiss” claims against the EBCI or its officials and agents “acting in their official capacities,” unless the Tribal Council or Congress “has expressly and unequivocally waived the Eastern Band’s sovereign immunity” for the specific claim in a “written ordinance, law, or contract.” Cherokee Code § 7-13.
This conclusion is further supported by established case law. The Supreme Court of the United States has determined that “the immunity possessed by Indian tribes is not coextensive with that of the States.” Kiowa Tribe of Okla., 523 U.S. at 756, 118 S.Ct. at 1703. Tribal sovereign immunity is fundamentally a matter of federal law. See id. at 754-58, 118 S.Ct. at 1702-1705. North Carolina courts, like most courts across the country, have followed the principle that waiver of tribal sovereign immunity cannot be implied but must be unequivocally expressed. See Seneca-Cayuga, 197 N.C.App. at 182, 676 S.E.2d at 584. It is in this vein that other courts have determined that purchasing liability insurance is not itself a waiver of tribal sovereign immunity. See Atkinson v. Haldane, 569 P.2d 151 (Alaska 1977) (holding that the purchase of liability insurance did not waive tribal sovereign immunity because doing so could motivate tribes to not purchase insurance leading to uncovered loss); Seminole Tribe of Fla. v. McCor, 903 So.2d 353 (Fla.Dist.Ct.App. 2005) (determining that purchasing liability insurance is not a clear and unequivocal waiver of tribal sovereign immunity). “Although it may be a plausible inference that the purchase of insurance indicates an intention to assume liability and waive tribal immunity, such an inference is not a proper basis for concluding that there was a clear waiver by the Tribe.” Seminole Tribe of Fla., 903 So.2d at 359 basing its holding on Atkinson v. Haldane, 569 P.2d 151 (Alaska 1977) and Miccosukee Tribe of Indians v. Napoleoni, 890 So.2d 1152 (Fla. Dist.Ct.App.2004).
Section l-2(g)(3) should not be interpreted as constituting an expressed and unequivocal waiver. The section itself does not use the terms “waiver” or “sovereign immunity” at all, either in the main paragraph, (g), or in sub-paragraph (3). To read it as constituting a waiver of tribal sovereign immunity would clearly violate § 16C-5(Z )(13) and § 7-13. Such an interpretation would also contradict the case law previously cited. If the EBCI intended for § 1-2(g)(3) to be a waiver of the tribe’s sovereign immunity in Chapter 16C per capita payment distribution claims, then the Tribal Council should amend the Cherokee Code to expressly and unequivocally so state.
Plaintiff next argues that defendants waived tribal sovereign immunity by failing to comply with the sovereign immunity endorsement in the Allied insurance agreement. We find this argument without merit.
While it is possible for a tribe to waive its tribal sovereign immunity through a contractual provision, that provision must be an express and unequivocal waiver of the tribe’s sovereign immunity. *188 Plaintiff points to the Allied Sovereign Immunity Endorsement in the joint appendix on appeal (hereinafter “J.A.”)> which reads:
In the event of a claim or suit, the “Carrier” agrees not to use the Sovereign immunity of the “Insured” as a defense, unless the “Insured” authorizes the company to raise such a defense by written notice to the “Carrier”. Any such notice will be sent not less than 10 days prior to the time required to answer any suit. Any use of the Sovereign Immunity defense will only apply to coverage and limits of this insurance policy. The “Carrier” is not authorized or empowered to waive or otherwise limit the “Insured's” Sovereign Immunity outside or beyond the scope of coverage or limits of this insurance policy.
Further, the “Insured”, by accepting this policy, agrees to release the company from any and all liability to them or their members because of the failure on the part of the “Carrier” to raise the defense of Sovereign Immunity, except in cases where the “Insured” specifically request the company to do so in the manner provided herein.
J.A. at 304; Allied Insurance Policy Endorsement. This endorsement contains no language that expressly and unequivocally waives EBCI’s tribal sovereign immunity by purchasing, complying, or failing to comply with this policy; and is therefore not a proper waiver. This policy provision could not be interpreted as a waiver of tribal sovereign immunity given our reading of § 7-13. Since plaintiff has failed to show that the policy contains a provision that contains a proper waiver of tribal sovereign immunity, this argument is overruled.
Plaintiff points to Welch v. Eastern Band of Cherokee Indians, 6 Cher.Rep. 20, — Am. Tribal Law -,-, 2007 WL 7079613, *1-2 (E.Cher.Ct.2007), and Jacobson v. Eastern Band of Cherokee Indians, 4 Cher.Rep. 31, — Am. Tribal Law -, -, 2005 WL 6438040, *1 (E.Cher.Ct.2005), in support of their argument that the EBCI waived its tribal sovereign immunity under § 1—2(g)(3) by purchasing insurance. We do not consider the Cherokee Court opinions as having any precedential value since the Cherokee Court is the trial court for this appellate court. In addition, these cases did not involve § 16C-5(l)(13).
For these reasons, we hold that plaintiff failed to establish that defendants explicitly waived their tribal sovereign immunity.

II. Public Officer Immunity

A. Standard of Review

A court reviewing a lower court’s ruling on a Rule 12(b)(6) motion uses a de novo standard of review. See Jackson v. Long, 102 F.3d 722, 728 (4th Cir.1996) (reviewing a lower court’s decision regarding public officer immunity under a de novo standard of review). A motion to dismiss for failure to state a claim based on the defense of public officer immunity is properly considered under the standard for a Rule 12(b)(6) motion to dismiss. See Dalenko v. Wake Cnty. Dept. of Human Servs., 157 N.C.App. 49, 54-55, 578 S.E.2d 599, 602-03 (2003). Reviewing a Rule 12(b)(6) motion requires a court to determine “whether, as a matter of law, the allegations of the complaint treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not.” Id. at 54, 578 S.E.2d at 603 (citations omitted). A court may properly dismiss an action under this standard “if there is a want of law to support a claim of the sort made, an absence of facts sufficient to make a good claim, or the disclo *189 sure of some fact which will necessarily defeat the claim.” Id. at 54-55, 578 S.E.2d at 603 (citation omitted). “[W]ell-pleaded factual allegations of the complaint are treated as true for purposes of a 12(b)(6) motion, conclusions of law or unwarranted deductions of facts are not admitted.” Id. at 56, 578 S.E.2d at 604 (citation omitted).

B. Analysis

Plaintiff argues that defendants waived any public officer immunity because the individual defendants acted outside the scope of their duties. Plaintiff bases this argument on the individual defendants’ failure to comply with investment guidelines that plaintiff argues were mandatory, requiring the defendants to put plaintiffs funds in a pre-payment sub-account. We disagree.
Public officer immunity is applicable when a government official is performing a discretionary function as long as the official’s “conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A discretionary function is one that “involves an element of judgment or choice.” Berkovitz by Berkovitz v. U.S., 486 U.S. 531, 537, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988); see also U.S. v. Gaubert, 499 U.S. 315, 323, 111 S.Ct. 1267, 1274, 113 L.Ed.2d 335 (1991). A public official is not protected by the public office immunity doctrine if the official’s actions are shown to be corrupt or malicious or outside the scope of the official’s duties. See Smith v. Hefner, 235 N.C. 1, 68 S.E.2d 783 (1952). Thus, “[a]s long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtues of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability.” Smith v. State, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976).
Defendants were acting in an official capacity that required them to use their discretion. Chapter 16C § 16C-6(a)(2) reads:
Members of the Investment Committee shall serve as the Trustees of the Minors Trust Fund, provided that there shall be no fewer than three Trustees. The Trustees shall select an institutional Manager and such other advisers as they deem necessary, with suitable expertise and discretion to administer the Minors Trust Fund and invest its assets. The Minors Trust Fund shall be invested in a reasonable and prudent manner so as to protect the principal and seek a reasonable return.
Cherokee Code Ch. 16C § 16C-6(a)(2) (2010). In contrast, the guidelines required that “as such time a participant reaches the age of 17, the participant’s balance shall be transferred to a separate, designated ‘pre-pay-out’ sub-account (the sub-account), the emphasis of which shall be principal preservation.” Pl.’s Br. Appeal 25-26.
Plaintiff has made no argument that defendants’ actions were corrupt or malicious. Instead, plaintiff solely argues that defendants acted outside the scope of their official duties. Plaintiff maintains that the guidelines were mandatory and because defendants did not follow them, their actions are therefore outside the scope of their official duties. While the guidelines are clear, they are merely guidelines. The Cherokee Code under § 16C-6(a)(2) provides the Minor Fund trustees power to exercise their discretion in investing the Funds’ assets. The decrease in the per capita distributions appeared to have been due to the economic downturn of 2008 rather than the management of the Minors *190 Trust Fund assets. There was no statutory requirement that trust fund monies be set aside in a pre-payment sub-account for 17 year old beneficiaries. Defendants exercised their discretion, as allowed under statute, to invest the funds’ assets in a reasonable manner. The Minors Trust Fund trustees must act as to what is required under statute, not what is required under guidelines. Thus, we hold that the individual defendants, including Chief Hicks, are entitled to public officer immunity protection from individual liability.

Conclusion

For the reasons stated above, we affirm the trial court’s decision to dismiss plaintiffs claims for lack of subject matter jurisdiction due to defendants’ tribal sovereign immunity and for a failure to state a valid claim due to defendants’ public officer immunity.
Affirmed.
Chief Justice BOYUM, Justice PIPESTEM, and Justice HUNTER, concur.

. Plaintiff, at oral argument, attempted to file a supplemental brief and an index of exhibits and authority which the Court denied.

. Plaintiff failed to challenge the trial court’s ruling that the Minors Trust Fund and the Investment Committee were not proper defendants and they are thus abandoned. See Appellants' Br. at 11 n. 8 (Cite to brief intentionally left in). Plaintiff also failed to make any arguments appealing the trial court’s ruling to dismiss plaintiff's unjust enrichment, constructive trust, or punitive damages claims and they are also abandoned. See Cherokee Code § 7-14(a) (2000) (explaining that Cherokee Court appellate procedure will be done in accordance with N.C. Rules of Appellate Procedure and with N.C. Rules of Civil Procedure) and see N.C. R. App. Pro. 28(a) (2015) (explaining that issues not discussed in appellate briefs are abandoned).